In the Matter of the Accounting of KINGS COUNTY TRUST COM-
PANY, as Executor and Trustee under the Will of SAMUEL
HARRIS, Deceased.

Surrogate's Court, Kings County, November 15, 1948.

*George Gray* for executor and trustee, petitioner.

*Abraham H. Lee* for Baron B. Blosveren and another, as executors of Jennie Harris, deceased incompetent, and another.

*Harry Sand* and *Herman Brand* for Girls' Club Association of Brooklyn, Inc.

920

*Lloyd B. Kanter* for Brooklyn Hebrew Orphan Asylum.

*Rathbone, Perry, Kelley & Drye* for Brooklyn Bureau of Social Service.

*Siegfried F. Hartman* and *George B. Levy* for Federation of Jewish Philanthropies of New York.

*Charles Jaffa* for Jewish Hospital of Brooklyn.

McGAREY, S. In this final accounting by the executor-trustee, the court is requested to instruct accountant in regard to five separate matters. As to four of them, about which no dispute exists, the decree to be entered herein may provide for the payment to the executors of the estate of testator's deceased sister of the balance of principal and income set forth in schedule J of the account and the amount held in the executor's income account; payment to the cemetery association of the amount specified for perpetual care of the burial plot containing the remains of testator, his sister, and their mother, and retention of the specified sum as a reserve for any additional taxes.

The remaining issue relates to two items of $4,000 each held by the trustee in a special fund pending determination as to whether they are payable to the estate of testator's sister, the sole life beneficiary of the trust created under paragraph " Seventh " of his will, dated September 27, 1930, or to the charitable remaindermen designated in paragraph " Ninth " thereof.

Testator died unmarried in February, 1941, survived by his sister, who died testate and unmarried on October 29, 1945. She was adjudged incompetent on December 18, 1944, and her committee and another qualified as executors of her estate.

After specifically bequeathing his personal effects, jewelry and household furnishings to his sister, testator placed the residue of his estate in trust for her benefit, which trust provision has been construed by this court as requiring the trustee to pay monthly to the sister-beneficiary all of the net earned income; if the income in any one month fell below $250, she was to be paid $250, the deficiency being paid out of principal without restoration to principal of any prior monthly invasions from subsequently earned income in excess of $250 in any one month. It was also determined that the further gift of $4,000 to her in each and every calendar year was in addition to her right to receive the net earned income, payable out of principal to the extent requested by her, and independent of whether or not the net income return required principal invasion. How-

ever, the court held that this additional gift was not cumulative and was waived to the extent of her failure to request payment thereof. It was further determined that the direction for payment out of principal of all expenses incidental to her illness or physical accident was in addition to her right to receive the other benefits provided for her.

By codicil, dated October 6, 1930, testator directed that upon the decease of his sister and before distribution to the remaindermen, all of her funeral expenses were to be paid.

It appears from the account, and it is not disputed, that pursuant to the provisions of the will and codicil, the trustee made the monthly payments of $250, invading principal when necessary to meet any monthly deficiency in income; paid all medical, hospital, nursing and other expenses incidental to her illness and her funeral expenses. Furthermore, as above indicated, the decree will provide for payment to her estate of additional principal and income, owing to her at the time of her death, and for perpetual care of the burial plot.

It is, therefore, evident that all the needs of testator's sister, both during the period prior to her adjudication and subsequent thereto, were attended to and provided for as directed by the will, and it is not claimed to the contrary. During the period of her competency, viz., between February 23, 1941, when testator died, and her adjudication on December 18, 1944, she made no request for the additional payments out of principal of $4,000 annually. However, her committee served upon accountant two ex parte orders of the Supreme Court, Queens County, authorizing and directing the committee to request accountant to pay the incompetent out of principal $4,000 for the year 1944 and a like amount for the year 1945. One order was obtained on December 29, 1944, eleven days after the adjudication of incompetency, and the other obtained on October 17, 1945, twelve days prior to death of the incompetent. It is these two amounts which are held in a special fund and the subject of dispute.

That testator intended to provide for his sister's every need is apparent from the provisions in paragraph " Seventh " of his will and in his codicil. He made that clear when he stated in paragraph " Eighth " of the will that " the *principal object* of my making this will is *to take care of and provide for* my beloved sister " and that if any question arose as to the meaning of any of the will provisions, " the same shall be construed liberally in favor of my said sister *if the same affects her."* His primary and only concern was for his sister and for no others. As far as he was concerned the entire corpus could be

exhausted, with nothing left to the remaindermen, providing the income and principal were used, within the limitations of the testamentary provisions, for the care of and provision for his sister. By the same token, the testator was not concerned about and did not intend to provide for the recipients of his sister's bounty in the event she died testate or for her (and his) distributees in intestacy. However, in the event any corpus remained not necessary " to take care of and provide for " his sister, then he wanted it to go to the designated remaindermen.

Viewed in the light of his expressed intention, it is understandable why he directed the trustee to pay over to his sister upon her mere request for such payment the sum of $4,000 in any and every calendar year. The right to receive this additional gift was purely personal to her and it is a reasonable inference that the provision was predicated on testator's belief and intent that although she could receive the amount merely by requesting it, she would exercise the privilege only in the event she had need for same. That he was justified in so providing her with this unlimited right is evidenced by the fact that she did not exercise the privilege afforded her during the years of her competency.

It is conceded by all parties in interest that testator's sister could have obtained the additional gift on her mere request. The question is whether her committee could exercise in her behalf the personal right given to her under the will in the same manner as she could have done during her competency, that is, merely to request payment. The court holds that the committee is without such power.

In so holding, the court is aware of the fact that the requests were made by the committee pursuant to direction of the court having jurisdiction of the incompetent's estate. However, such orders were obtained ex parte and without notice to others interested in the estate or fund. Furthermore, the orders only directed the committee to request payment and such directions may not be considered as a finding of his right to receive the same. It was, therefore, for this court to determine whether the trustee could, under the terms of the will, pay over funds to one other than the beneficiary upon mere request.

The right given to testator's sister was purely personal with her (*Matter of Grant,* 122 Misc. 491, 492). It was an unlimited right to receive a specified sum in any and every year simply by requesting it. To the extent that she failed to request payment in one year, she forfeited the right to obtain it in a later year. Upon her adjudication as an incompetent this unlimited

right did not pass to her committee, for it is clear that the testator intended to confine that privilege exclusively to her, and with the principal object in mind to take care and provide for her.

The right given to the incompetent did not involve the exercise of a personal privilege to elect between alternative and inconsistent rights. If such right did involve such an election, it would appear that the exercise thereof would not have passed to the committee and that the Supreme Court having jurisdiction of the incompetent's estate would alone have the power to act in the place of the incompetent in exercising the choice (*Matter of Hills,* 264 N. Y. 349, 353–354). Likewise, " a waiver or abandonment of a right of the incompetent * * * may require a direction from the Supreme Court " (*Matter of Hills, supra,* p. 355; see, also, *Manufacturers Trust Co.* v. *Gray,* 251 App. Div. 482, 484, mod. 278 N. Y. 380). However, the right given to the incompetent under the will did not involve an election as between alternative and inconsistent rights. Nor would a request by the committee for payment involve a waiver or abandonment of a right. On the contrary, it would appear that the committee, under his duty to protect the rights of his incompetent, would have not only the power but the duty to assert the rights of his incompetent (*Matter of Hills, supra,* pp. 354–355).

The order of the Supreme Court was not predicated upon an inquiry into the facts upon notice to all interested and necessary parties, and this court is not passing upon the effect it might be required to give to any such order (*Matter of Hills, supra,* pp. 353–354, citing *Matter of Lord,* 227 N. Y. 145; *Matter of Flagler,* 248 N. Y. 415, and *Matter of Brown,* 212 App. Div. 677, affd. 240 N. Y. 646; see, also, *Empire Trust Co.* v. *Fell,* 271 N. Y. 72, 75; *Schwartzberg* v. *Teachers' Retirement Bd.,* 273 App. Div. 240, and cases cited at pages 243 and 244; *Matter of Norris,* 266 App. Div. 882, 883, revg. 180 Misc. 361; *Matter of Palyo,* 187 Misc. 884, and cases cited therein, and *Chase Nat. Bank of City of N. Y.* v. *Ginnel,* 50 N. Y. S. 2d 345, 347, not otherwise reported).

As it appears from the account that all of the needs of his incompetent were provided for, and it further appearing that the orders obtained from the Supreme Court were ex parte and merely directed him to assert a right which the committee was empowered to and had the duty to do, the decree to be entered herein may provide for the payment over of the fund in dispute to the remaindermen of the trust.

Proceed accordingly.