Roy E. Hunn, as Administrator, etc., of Myrta E. Hunn, Deceased, Respondent, *v.* New York State Teachers' Retirement System, Appellant.*

Fourth Department, May 20, 1942.

*Charles A. Brind, Jr., Counsel for New York State Education Department,* for the appellant.

*Everest A. Judd,* for the respondent.

Taylor, J.   Myrta E. Hunn, a teacher in the employ of the board of education of the city of Batavia and a member of the New York State Teachers' Retirement System (hereinafter called the System)

* Revg. 176 Misc. 643.

was committed on July 25, 1940, to the Rochester State Hospital by order of the county judge of Genesee county, pursuant to the provisions of section 74 of the Mental Hygiene Law. On August 7, 1940, her brother, Roy E. Hunn, signed and filed with the System's Retirement Board an application for her retirement on account of disability. The Retirement Board furnished the application blank and advised this procedure, knowing that Miss Hunn was under commitment as an insane person and that no committee of her estate had been appointed. In so doing, the Retirement Board relied upon its interpretation of the statutory provision relating to applications for disability retirement which provides that a member " may be retired on account of disability either upon the application of his employer or upon his own application or that of a person acting in his behalf." (Education Law, § 1109-a, subd. 1.) On September 6, 1940, the Retirement Board approved the application and directed her retirement on the maximum allowance to which she was entitled. On September 30, 1940, the System mailed to Miss Hunn, in care of her brother, its initial allowance check covering the period from September 6 to September 30, 1940, which check was received but not cashed. Miss Hunn, while on parole from the State hospital, died by drowning early on the morning of October 3, 1940. Although on September 17, 1940, an order was made and entered appointing her brother committee of her person and property upon filing of his official bond, the bond was not filed until the day of her death. Thereafter, her brother — having been duly appointed administrator of her estate — returned the allowance check with demand for payment of the death benefit (her accumulated contributions in and to the retirement fund), which was payable in the event that a member of the System died before retirement. As administrator, he made no claim that the action of the Retirement Board was not in the best interests of his intestate but asserted that disability retirement effects a disposition of a member's property or property rights and that the Legislature must have intended that only a person authorized by the member or, if an incompetent, his duly appointed committee, could legally apply in the member's behalf for retirement on account of disability. Upon refusal of his demand, plaintiff as administrator sought, and has obtained, a declaratory judgment which, in substance, declares and adjudges that the retirement application which he made and the subsequent retirement of his intestate, are invalid and that he is entitled to recover from the System his intestate's accumulated contributions in and to the System's retirement fund. The basis of these decrees is the further declaration and decree: " That the provision of Section 1109-a of the Education Law

which states that a member of the defendant system may be retired on account of disability ' upon the application of a person acting in his or her behalf,' requires that such person be the duly lawfully appointed and authorized agent, or attorney, for said member, and if the said member has been declared insane under the Mental Hygiene Law, no one can act for her until office found."

The question, which this appeal by the System presents, is whether this quoted declaration reflects the proper construction of that part of section 1109-a of the Education Law which specifies the person who may make an application for disability retirement.

The Legislature, by chapter 503 of the Laws of 1920, established this system upon an actuarial basis (Education Law, art. 43-B, § 1100 *et seq.*), created a Retirement Board and vested therein responsibility for the proper operation of the System, and authorized that Board to establish rules and regulations for the administration of its business and for the control of its funds. (§ 1103.) These funds are public moneys (*Matter of Mahon* v. *Board of Education*, 171 N. Y. 263, 265), and disbursements therefrom, for the purposes which the statute permits, may be made only as authorized by resolution of the Retirement Board duly adopted at a meeting of the Board by a majority of its members. (§ 1106, subd. [3].) While the purpose of the Legislature was to secure to the System's superannuated and disabled members a retirement allowance, the Legislature has not required the Retirement Board to investigate or act until the Board receives an application for retirement. A member who is eligible for superannuation retirement and who wishes to retire, is required to file with the Board his duly attested statement setting forth the time — not less than thirty days nor more than sixty days subsequent to the execution and filing thereof — when he desires to be retired (§ 1109) and the statement, unless it be withdrawn prior to the effective date of retirement, is self-executing and is tantamount to being a resignation from his position as a teacher. (*Matter of Fitzpatrick* v. *N. Y. State Teachers' Retirement Board*, 212 App. Div. 760; affd., 241 N. Y. 515. See, also, *Matter of Creveling* v. *Teachers' Retirement Board*, 255 id. 364, 370.)

Section 1109-a provides for retirement on account of mental or physical disability and, within its many provisions, contains a comprehensive plan for the retirement of a member who has been compelled to cease teaching on account of disability. Subdivision 1 thereof reads in part: " 1. Retirement on account of disability shall be made under the following conditions: A member * * * may be retired on account of disability either upon the application of his employer or upon his own application or that of a person acting

in his behalf * * *." The Legislature has not therein prescribed the form of the application or the time when the Board shall act thereon, and has not specifically required that the person " acting in his behalf " must be one who is authorized by the member himself, the implication being that the Legislature authorized the Board to adopt reasonable rules and regulations in respect thereto. The application is not self-executing because subdivision 1 further provides that before the Board may authorize payment of an allowance, it must cause the member to undergo a medical examination by one or more physicians appointed by it and must determine, upon the basis of the physician's report " that the said member is physically or mentally incapacitated for the performance of duty, that he was incapacitated at the time he ceased teaching and that said member ought to be retired." The provision " that he was incapacitated at the time he ceased teaching " was inserted by section 8 of chapter 704 of the Laws of 1927. The apparent purpose of the amendment was to limit the Board's authority to grant an allowance to cases involving serious and probably permanent physical or mental impairment, thus eliminating possible conflict with board of education rules in respect to absence from duty on account of personal illness not amounting to disability. (Education Law, § 872.)

Since the Retirement Board may not retire a member who has not already been compelled to cease teaching, the application does not affect the member's right to perform his duties as a teacher and to be paid therefor. Where the circumstances are such that the application is made by the employer or by a person acting in behalf of the member, his authority apparently ceases with the filing of the application. Neither, under subdivision 1 of section 1109-a, is authorized to make any election in respect to the form or amount of the retirement allowance; subdivision (2) provides for the payment of the allowance and the method for computing it. Under subdivisions (3) and (5), a former member, who has been retired for disability and who recovers therefrom, may be restored to membership in the System and to active service without loss of prior service credit; the filing of an application for disability retirement, therefore, does not jeopardize the member's tenure rights as a teacher but, instead, it serves to protect and to preserve such rights in the event that the member recovers.

The foregoing review of the statutory provisions leads us to conclude that an application for disability retirement, when made by a person other than the member himself, does not enable such other person to determine the disposition to be made of the member's property or property rights; such an application is but the initial step which must be taken in order to obtain the statutory

benefits to which the member may be entitled and which do not become available unless an application therefor is filed. In this view, the Legislature would seem to have intended that the phrase " in his behalf " should be given its dictionary meaning, thus authorizing the Retirement Board to receive and to act upon the application of a person acting " in the interest, to the advantage " of a member who is mentally or physically unable to act for himself. Under this construction, the Retirement Board properly retired plaintiff's intestate in accordance with the procedure prescribed by the Legislature. The well-settled rules, therefore, relating to the control and disposition of an incompetent's property (see *Finch* v. *Goldstein*, 245 N. Y. 300, and *Matter of Frank*, 283 id. 106) are inapplicable.

The judgment should be reversed on the law, with costs, and judgment directed in favor of the defendant declaring and adjudging that plaintiff's intestate was legally retired pursuant to subdivision 1 of section 1109-a of the Education Law and that plaintiff is not entitled to recover from defendant his intestate's accumulated contributions in and to the retirement fund.

All concur, except HARRIS, J., who dissents and votes for affirmance on the ground that the alleged retirement was brought about by one who was not authorized to make such application under subdivision 1 of section 1109-a of the Education Law. Present — CROSBY, P. J., CUNNINGHAM, TAYLOR, HARRIS and McCURN, JJ.

Judgment reversed on the law, with costs, and judgment directed in favor of the defendant declaring and adjudging that plaintiff's intestate was legally retired pursuant to subdivision 1 of section 1109-a of the Education Law and that plaintiff is not entitled to recover from defendant the accumulated contributions in and to the retirement fund.