MIRIAM SCHWARTZBERG, as Administratrix of the Estate of IDA B. SCHWARTZBERG, Deceased, Appellant, *v.* TEACHERS' RETIREMENT BOARD OF CITY OF NEW YORK et al., Respondents.

First Department, February 2, 1948.

*Irving Mariash* for appellant.

*Arthur H. Kahn* of counsel (*Seymour B. Quel* and *Michael A. Castaldi* with him on the brief; *John P. McGrath, Corporation Counsel,* attorney), for respondents.

VAN VOORHIS, J. Plaintiff's decedent, Ida B. Schwartzberg, taught school in the city of New York from 1904 to 1942. She died in March, 1944, having been incompetent since her retirement in 1942. She belonged to the retirement system operated by defendant Teachers' Retirement Board of the City of New York, and had several options which she was empowered to exercise concerning the payment of her retirement allowance. " Option No. 1 " entitled her to receive $69.90 per month, and, in the event of her death before receiving her total retirement accumulation of $12,257.48, the difference between the total of what she had received at death and said $12,257.48 would be paid to her estate. Another option provided that, without any payment to be made upon her death, she would receive monthly pension installments of $89.36 each. She was paid $1,072.32 before she died, the Retirement Board proceeding upon the theory that she was to be dealt with in accordance with the latter option.

In 1930, she had duly signified her election in event of retirement to be paid in accordance with Option No. 1.

However, on January 11, 1943, after becoming incompetent, she signed a revocation of her choice of Option No. 1, and instead purported to elect to take the maximum allowance payable during her life, amounting to $89.36 per month, without the payment of anything to her estate upon her death.

The history of her illness, resulting in her retirement, is as follows: on January 13, 1942, she fell downstairs in the school and sustained a fracture of several vertebrae and a concussion of the brain. On September 10, 1942, she was placed in the New York State Psychiatric Institute and Hospital with the diagnosis of psychosis with cerebral arteriosclerosis, and the trial court found that she was continuously and uninterruptedly incompetent from then until her death. The evidence supports this finding. The nature of her disease was known greatly to have shortened her life expectancy. She survived to receive only twelve monthly payments.

If she had continued with Option No. 1, the difference between the total of these twelve payments, aggregating $1,072.32, and the $12,257.48 which was her full accumulation under the retirement allowance, would have been payable to her estate less any loans made in her lifetime, her estate being her designated beneficiary under the election which she made in 1930 to accept Option No. 1. This sum was demanded by plaintiff as administratrix, but was refused on the ground that Option No. 1 had been revoked by decedent on January 11, 1943, and the other option substituted in its place.

The purported revocation of Option No. 1 was a nullity, as the trial court has held, on account of her mental incapacity at that time. Nevertheless, plaintiff has been defeated under *Matter of Feltner* v. *Teachers' Retirement Board* (235 App. Div. 207) on the theory that its authority required that, notwithstanding her manifest wish while in possession of her mental faculties, the court must exercise for her the option which would provide her personally with the largest amount of cash in her lifetime.

The *Feltner* case is distinguishable in that no previous valid election had there been made, as in this case, to take a different option from that which would provide the greatest amount during the lifetime of the retired employee. While it is true that the committee of a lunatic, acting under the supervision of the court, can undoubtedly revoke one option and select another if immediately necessary for the support of the incompetent, as in the case of accepting the cash surrender value of a life insurance policy, nevertheless elections by committees are not favored so as to supersede previous elections made by incompetents while in the full possession of their powers. Even where no previous election has been made, the court must make the election for an incompetent which would be in accordance with what would have been his manifest and reasonable choice if he were sane, and, in the absence of convincing evidence that

the incompetent would have made a different selection, it is presumed that he would have chosen the option yielding the largest returns in his lifetime (*Matter of Feltner* v. *Teachers' Retirement Board, supra*). Urgent necessity for the incompetent's immediate needs must be clearly and unequivocally shown in order to revoke a past choice.

The right to elect in favor of making such a provision for one's estate is a valuable right. Where it has been exercised it should not be taken away except on clear evidence that insistent needs of the incompetent require it. (*Matter of Rasmussen*, 147 Misc. 564; *National Commercial Bank & Trust Co.*, 50 N. Y. S. 2d 274; *Chase National Bank* v. *Ginnel*, 50 N. Y. S. 2d 345; *Matter of Wainman*, 121 Misc. 318; *Kay* v. *Erickson*, 209 Wis. 147; *Matter of Battin*, 171 Misc. 145; *Camardella* v. *Schwartz*, 126 App. Div. 334.)

In this instance it appears that the incompetent had three children aged twenty-four, twenty-six and twenty-eight at the time of her retirement. They were all then self-supporting, they had paid for board and lodging while living at home, and two of the three, at least, helped to support her when she was at the Psychiatric Institute. All three children had gone through high school, college, and postgraduate work. There was no change in any material matter affecting the situation from the time when she retired and became incompetent in 1942, until her death in 1944. The circumstance that she had not chosen to alter the option selected in 1930 before she became incompetent in 1942 is significant.

The burden was upon the defendants to establish that her urgent needs required revocation of Option No. 1. Defendants did not assume this burden, but attempted to cast upon plaintiff the burden of proving the opposite. There is no evidence concerning what other property decedent may have had when she died. It is true that she had no bank accounts, but plaintiff testified that there had been some bank accounts which decedent had transferred to plaintiff's name for convenience. The amount of them is unknown from this record, and may have been slight. Her children had always been her first consideration; she had supported them in infancy and educated them well, and it is probable that she had been unable to accumulate much except her retirement allowance reserve. Nevertheless, the children were easily able to make up out of their own incomes the $19.46 a month additional support money which would have come to decedent by revoking Option No. 1 and abandoning any payment

to her estate. Her relations with her children had been cordial and intimate. It was her tendency to provide for them ahead of herself. They were willing to pay whatever was necessary or proper to supplement the $69.90 per month which would have come to her under Option No. 1. Not to have called upon them to pay the additional $19.46 per month, if she needed it, in order to continue under Option No. 1, would have been folly in view of her shortened life expectancy. Had she been able to make the decision, there can be no doubt what she would have done. " A court of equity, through its general jurisdiction over fiduciaries and its function of guardianship of incompetents, may, in proper case, direct the committee to act in behalf of the incompetent in accordance with what the court finds would, in all probability, have been the choice of the incompetent if he had been of sound mind. (*Matter of Lord,* 227 N. Y. 145; *Matter of Flagler,* 248 N. Y. 415.) " (*Matter of Hills,* 264 N. Y. 349, 353–354.)

There is no estoppel on the part of decedent's children. In her incompetent condition, and at the suggestion of the defendant, she got it into her head that she should take all of the cash that she could get, but with the dominant facts absent from her thought which would have governed her decision if she had been in her right mind. The circumstance that her children, or some of them, did some acts to help their mother carry her diseased judgment into effect, out of tenderness or consideration for her supposed wish, would not amount to an estoppel, even if the children had been shown to have been aware of the amount of the accumulated retirement allowance, which was not proven. Estoppel depends upon acting with knowledge of the relevant facts in the situation.

The judgment appealed from in favor of the defendants should be reversed, with costs to the plaintiff-appellant and judgment granted to the plaintiff for the relief demanded in the complaint, with costs.

PECK, P. J., GLENNON, DORE and SHIENTAG, JJ., concur.

Judgment unanimously reversed, with costs to the plaintiff-appellant and judgment granted to plaintiff for the relief demanded in the complaint, with costs.

Settle order on notice.