Adeline C. MONCRIEF, Individually and as Natural Guardian of Patricia Y. Moncrief, a minor,

v.

Oveta Culp HOBBY, Secretary of the Department of Health, Education and Welfare.

Civ. A. No. 7905.

United States District Court
D. Maryland, Civil Division.
July 29, 1955.

 

Thomas M. Gittings, Jr., Bethesda, Md., George W. Constable, Baltimore, Md., for plaintiff.

George Cochran Doub, U. S. Atty. and Wm. F. Mosner, Asst. U. S. Atty., Baltimore, Md., for defendant.

CHESNUT, District Judge.

The plaintiff in this case, the widow of James Gilbert Moncrief, filed a claim with the Federal Security Administration for herself and as mother and guardian of Patricia Y. Moncrief, a minor, for social security benefits. After extended consideration of the claim at various administrative levels, it was finally denied by the Department on the ground that it was not authorized by the applicable statute, 42 U.S.C.A. § 417(e). The complaint in this case was filed to reverse this administrative determination. The authority and jurisdiction for consideration of the case is given by 42 U.S.C.A. § 405(g).

The case has been argued by counsel for the parties on the complaint and answer in which the controlling facts are stated without contradiction. Both parties have separately filed motions for summary judgment. The controlling and undisputed facts can be briefly stated.

James Gilbert Moncrief was born September 27, 1909, in Alabama. He was 43 years of age at the time of his death which occurred on October 2, 1952. He enlisted in the United States Navy February 10, 1930, and served therein continuously until November 18, 1949, when he was released from active duty and transferred to "Fleet Reserve" status with constructive credit of 20 years in the Navy. He thus became entitled to and did receive the retainer pay authorized by 34 U.S.C.A. § 854c. While on reserve status he was employed civilly and earned total compensation of $897.73 over a period of about six months (that is two quarters of a year) until April 1, 1952. Under his status in the Fleet Reserve he remained subject to recall to active naval duty, 34 U.S.C.A. § 854d, and he was in fact recalled to

such active duty on April 12, 1952. While so engaged and stationed at Bainbridge Naval Training Center in Maryland, he died on October 2, 1952. At that time his wife, the plaintiff in this case, and his minor child then about 8 years of age were dependent upon him. The plaintiff filed her claim for social security benefits on January 22, 1943. The claim was based on section 417(e) (1) enacted July 18, 1952. There was, however, an exception expressly written into the section which provided that it should not be applicable if—

"a benefit * * * which is based, in whole or in part, upon the active military or naval service of such veteran on or after July 25, 1947 and prior to January 1, 1954, is determined by any agency or wholly owned instrumentality of the United States (other than the Veterans Administration) to be payable by it under any other law of the United States or under a system established by such agency or instrumentality".

In response to request for certification regarding payments on account of the veteran the Navy Department certified that an award had been approved for the veteran, Moncrief, for a monthly or other periodic payment which had been "based in whole or in part on military or naval service of the veteran in the Armed Forces of the United States during the period of July 25, 1947 through December 31, 1953". This certificate was dated September 25, 1953. It will be found in the record as Exhibit No. J filed with the defendant's answer. The reasons for the final rejection of the claim were stated in a written opinion of the Appeals Council of the Social Security Administration dated September 29, 1954, which, after reviewing the facts, stated the reason for the rejection was—

"because service wage credits could not be given in these cases, since the wage earner's active naval service including both the World War

II period and post World War II period have been used, in whole or in part, for Naval retirement purposes. It is clear here that the wage earner's naval service extended into both such periods, and that another portion of the same period could not, under the provisions of section 217 (a) (sic) of the Social Security Act as amended, be used for the establishment of wage credits for social security purposes. The transfer of the wage earner into the Fleet Naval Reserve under the above circumstances is considered a retirement for social security purposes, and the retainer pay he received while in the Fleet Reserve is regarded as retirement pay. Therefore, the disallowance of these applications which is consistent with long established procedure is for the reasons as stated above, and not because the Navy Department made its usual lump-sum payment of six months' death gratuity pay as inadvertently stated by the Referee." See pages 2 and 3 of the record filed with the answer.

The case here must be determined by the proper application of section 417(e) (1) to the undisputed facts of this case. The pertinent part of the section reads as follows:

"§.417(e) (1), enacted in 1952:

"For purposes of determining entitlement to and the amount of any monthly benefit or lump-sum death payment payable under this subchapter on the basis of the wages and self-employment income of any veteran (as defined in paragraph (4) of this subsection), such veteran shall be deemed to have been paid wages (in addition to the wages, if any, actually paid to him) of $160 in each month during any part of which he served in the active military or naval service of the United States on or after July 25, 1947, and prior to January 1, 1954. This subsection shall not be applicable in

the case of any monthly benefit or lump-sum death payment if—

"(A) * * *

"(B) a benefit (other than a benefit payable in a lump sum unless it is a commutation of, or a substitute for, periodic payments) which is based, in whole or in part, upon the active military or naval service of such veteran on or after July 25, 1947, and prior to January 1, 1954, is determined by any agency or wholly owned instrumentality of the United States (other than the Veterans' Administration) to be payable by it under any other law of the United States or under a system established by such agency or instrumentality."

The contention of the defendant is that the excepting clause is so clear and unambiguous and plainly worded that the mere application of its language to the undisputed facts shows that the claim is unfounded. On the other hand counsel for the plaintiff contends that the legislative history of the particular section shows that it must be construed to include provision for social security benefits to the plaintiff and that the excepting clause must be read by interpolating in subchapter (B) of the excepting clause the words "same period of" so that it will read:

"(B) a benefit * * * which is based, in whole or in part, upon the *same period of* active military or naval service of such veteran on or after July 25, 1947, and prior to January 1, 1954";

and if the interpolation is so made it will be consistent with the intention of Congress as expressed in the section which was enacted July 18, 1952. The ultimate question, therefore, is whether the court is authorized by judicial construction to add these words to the statute as enacted by Congress.

To more fully understand the precise point involved it is necessary to refer to some background history, not only the particular legislative history of the section but also to some outstanding facts of national history occurring in the last twenty years.

The Social Security System, first enacted by Congress in 1935, and sustained in constitutional principle by the Supreme Court of the United States in Chas. C. Steward Mach. Co. v. Davis, 1936, 301 U.S. 548, 57 S.Ct. 883, 81 L. Ed. 1279, and now with many amendments since 1935, constitutes vast and complex legislation. At present it is contained in chapter 7—Social Security —of title 42, Public Health and Welfare, 42 U.S.C.A. §§ 301–1355, and divided into 14 subchapters. It includes such diverse subjects matter as (1) grants to States for old-age assistance; (2) federal old-age and survivors insurance benefits; (3) grants to States for unemployment compensation administration; (4) grants to States for aid to dependent children; (5) grants to States for maternal and child welfare; (6) public health work (now repealed); (7) administration; (8) taxes with respect to employment (superseded); (9) taxes on employers of eight or more; (10) grants to States for aid to the blind; (11) general provisions; (12) advances to State unemployment funds; (13) reconversion unemployment benefits for seamen; (14) grants to States for aid to permanently and totally disabled.

In the present case we are concerned only with subchapter 2—federal old-age and survivors insurance benefits. In general the basic provision for this type of social security was to grant benefits to employees who by virtue of their employment in civil (not governmental) occupations from time to time built up from that portion of the tax on employers chargeable to them and the employees respectively and constituting a trust fund for their benefit, old-age insurance for themselves and benefits for their surviving dependents. Simply stated, to entitle the employee to social security benefits for himself or for his dependents, he must have been either fully insured, 42 U.S.C.A. § 414(a), or

currently insured, 42 U.S.C.A. § 414(b). To be fully insured the employee must have had a minimum of six quarters (18 months) of social security coverage, 42 U.S.C.A. § 413. To be currently insured the employee must have had at his death at least six quarters of coverage within the preceding three years. In the instant case Moncrief died before he was 65 years of age (and therefore before he personally would have been entitled to receive any social security benefits). Nor was he currently insured (for the benefit of his dependents) at the time of his death because he did not have six quarters (18 months) of social security coverage. As Moncrief was neither fully nor currently insured his dependent widow and child were not entitled to social security benefits unless the two quarters (six months) social security coverage which he had accumulated during his civil employment could be supplemented by the 18 months during which he was in active naval service after being recalled from the Reserve List. The plaintiff's contention is that by the proper construction of section 417(e) (1) he did have six quarters of wage credits by reason of his 18 months of active naval service when so recalled from the Reserve List.

Support for this contention is said by plaintiff's counsel to be found in the legislative history of the section, particularly in the Senate and House Reports recommending its passage, relating to the particular section. The extract from the Senate Report referred to reads as follows:

"As in the case of World War II wage credits, the credits provided by the bill would not be given in any case where any benefit *based on the same period of service* is payable by any Federal agency other than the Veterans' Administration. Thus for example, if credit is given under the civil service retirement system * * * *for the service in question*, it could not be credited under old-age and survivors' insurance".

(Emphasis supplied by plaintiff's counsel.) U. S. Code Cong. & Admin. News 1952, p. 2368.

In this connection counsel for the plaintiff points out that the certification by the Navy Department above referred to in the statement of facts only stated that credit had been given in whole or in part to Moncrief for this retirement Naval pay for the period from July 25, 1947, to December 31, 1953; and that while it appears from the record that Moncrief received Naval benefits based on the period from July 26, 1947, to November 18, 1949, and not on his subsequent service from April 12, 1951, until his death on October 2, 1952, this earlier benefit was based in whole or in part on Naval Service between July 25, 1947, and January 1, 1954. Counsel for the plaintiff argues that as Moncrief received no actual benefits from the period of his recalled active service he should be entitled under section 417(e) (1) to wage credits for his 18 months of recalled active service. And to accomplish by construction this application of the section, the exception to the allowance of military or naval wage credits as written into the statute should include therein by interpolation the words "same period of" as previously explained.

But after careful consideration of the able briefs furnished by counsel in this case, and by some extended further personal study of the statute, I am not able to reach the conclusion that this contention is sound. We must consider not only the comparatively short excerpt from the Senate Report but also the national history of the last 15 years which brought about the inclusion of wage credits based on Naval service in the subject of old-age and survivors' social security benefits. Prior to 1946 there was no such provision in the law. It will be remembered that on the outbreak of the Second World War on December 7, 1941, it became necessary as rapidly as possible to expand the Military and Naval Forces of the United States from a then existing number of several hun-

dred thousand to many millions. To accomplish this, persons who had been in civil employment and built up social security benefits were necessarily taken from their ordinary civil occupations and called to the defense of the country. By this interruption of civil employment the individual was deprived of his opportunity to continue to build up social security coverage. In 1946, shortly after the close of actual armed hostilities, Congress passed the first Act providing for wage credits based on Military or Naval Service. 60 Stat. 979. So far as relevant here, it provided that on certain conditions military and naval personnel, in the event of death during the period of three years immediately following separation from active service should be deemed (1) to have died fully insured and (2) to have had an average monthly wage of not less than $160 while in the Service. The particular conditions of the Act are not applicable here other than reference thereto for the purpose of showing the origin of military or naval monthly wage credits in relation to social security benefits for old-age and survivor insurance. The probable reason for the new provision was the consideration that as in most cases the employee was prevented by national necessity from continuing to build up social security coverage in civil employment, he ought to be compensated therefor by allowance of wage credits while in military service.

In August 1950 Congress amended or superseded the 1946 Act, now 42 U.S. C.A. § 417(a), by providing that—

"(a) (1) For purposes of determining entitlement to and the amount of any monthly benefit for any month after August 1950 * * * payable under this subchapter on the basis of the wages or self employment income of any World War II veteran, such veteran shall be deemed to have been paid wages (in addition to the wages, if any, actually paid to him) of $160 in each month during any part of which he served in the active mili-

tary or naval service of the United States during World War II. This subsection shall not be applicable in the case of any monthly benefit * * * if

"(A) * * *

"(B) a benefit * * * which is based, in whole or in part, upon the active military or naval service of such veteran during World War II is determined by any agency or wholly owned instrumentality of the United States (other than the Veterans' Administration) to be payable by it under any other law of the United States or under a system established by such agency or instrumentality." 64 Stat. 512.

It will be noted that the exception to the applicability of military or naval monthly wage credits in the 1952 Act is in precisely the same phraseology as that contained in section 417(a) (1) enacted in 1950, except that in the language of the 1950 Act reading "during World War II" there is substituted in 1952 "on or after July 25, 1947, and prior to January 1, 1954". I think the history of this patricular legislation is consistent with the view that in providing social security wage credits for certain veterans, the fund created for the benefit of persons in civil employment should not be burdened by requiring payment therefrom of social security benefits to military or naval personnel for whom other governmental benefits were provided under special legislation relating to military and naval personnel. In this connection it will be remembered that Congress has provided various benefits for other classes of persons not primarily within the contemplation of the social security law as to old-age and survivors' insurance. As, for instance, in the case of Civil Service employees, the Railroad Retirement Fund and Military and Naval Retirement Program. In the case of the latter, however, I believe the ordinary minimum period of service entitling one to retirement pay is 20 years. Congress possibly had in mind

that those persons called into Military or Naval Service for the emergency of World War II would not be entitled by length of service to any benefits in the nature of retirement pay. The purposes of the 1950 and the 1952 Acts respectively were the same with the exception of the period covered. In the 1950 Act the period was "during World War II"; in the 1952 Act the period was on and after July 25, 1947 (which was a day after the date of Presidential Proclamation of the end of World War II) and prior to January 1, 1954. The extension of the period in the 1952 Act to January 1, 1954, was doubtless due to the intervening Korean Conflict which had begun in 1950. The period was again extended to July 1, 1955, presumably due to existing international conditions and the continued requirement for defense personnel. 68 Stat. 1081.

The whole of the Senate Report on the 1952 Act will be found in United States Code Congressional Service and Administrative News, 82d Cong. 2d Sess. 1952, Vol. 2, p. 2363 et seq.; see particularly pp. 2368–2369. I find nothing in the Report as a whole that sustains the plaintiff's contention. On the contrary it tends rather to support the defendant's contention. In the particular sentence relied on by the plaintiff the first phrase is "as in the case of World War II wage credits". This, together with other portions of the Report seem to indicate that the similarly worded exceptions in both Acts were to be given the same effect. Both related to a particularly stated period of time which was in the 1950 Act during World War II and in the 1952 Act the period was from July 25, 1947 (the official end of World War II) to January 1, 1954. The purpose of the exception in both Acts was to preclude the operation of monthly wage credits during military service where the veteran had had the benefit of military or other benefits arising from governmental service. In this respect Congress made a broad exception without undertaking a quantitative comparison of the particular benefits flowing from accrued governmental service as compared with social security benefits.

■ The plaintiff's contention is that the 1952 Act which in clear words comprehended a particular period of July 25, 1947, to January 1, 1954, should be divided, for the purpose of the present case, into two separate periods, that is, a period ending November 18, 1949 (when Moncrief went on Fleet Reserve status), and another period from April 12, 1951 (when he was recalled to active service), until he died on October 2, 1952. I have been unable to find any support for this contention in the legislative history of the subject matter brought to my attention and it seems quite inconsistent with the very plain wording of both the 1950 and the 1952 Acts. The effort made by plaintiff's counsel to make this attempted division of the whole period into two separate periods is not in my view supported by a reference to the phrase "same period of" contained in one sentence of the Senate Report, p. 2368. At the most the phrase "same period of" in the Senate Report is of uncertain import; while the language of the Act itself contains no uncertain terms. It is not permissible to import into the unambiguous words of the Act itself a different meaning based only on an uncertain wording of a Committee Report.

■ Nor can I find warrant from the settled principles of statutory construction for interpolating the phrase "same period of" into the excepting clause of the 1952 Act. It is an elementary and indeed cardinal rule of statutory construction that where a statute uses plain and unambiguous words, courts are not justified in changing the wording to meet particular situations even where it might plausibly be thought, that the legislative body might have changed the words, if the particular subsequently arising contingency had been then in contemplation. On the contrary, where the language of the statute is plain and unambiguous and does not result in absurd or obviously unintended results, courts are not at

liberty to make substitution in language to meet the supposed equity of a particular case. This has been fully and carefully stated by Circuit Judge Dobie in the case of Clarke v. Harleysville Mut. Cas. Co., 4 Cir., 123 F.2d 499, at page 501. See also Federal Trade Commission v. Bunte Bros., Inc., 312 U.S. 349, 61 S.Ct. 580, 85 L.Ed. 881; 82 C.J.S., Statutes, §§ 322, 326, pp. 577, 622.

In support of the statutory construction advanced by the plaintiff, counsel argues that the statutory provision for monthly wage credits for military service in support of social security benefits should be considered remedial legislation to cure an injustice or inequity, and that therefore the affirmative portion of the statute should be applied liberally and the excepting clause should be narrowed by construction. In this connection they cite four cases: Le Maistre v. Leffers, 1947, 333 U.S. 1, 68 S.Ct. 371, 92 L. Ed. 429; Socony-Vacuum Oil Co. v. Smith, 1939, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265; Piedmont & N. R. Co. v. Interstate Commerce Commission, 1932, 286 U.S. 299, 52 S.Ct. 541, 76 L.Ed. 1115; Stewart v. Kahn, 1870, 11 Wall. 493, 20 L.Ed. 176. But on examination I find them not really in point because they deal with statutes of very different wording and purpose and I do not find that they are inconsistent with the general rule of statutory construction above mentioned. Nor does it seem to me a fair comment to describe the plain wording of the excepting clause in the statute as constituting an injustice or lack of equity. The statutory provision for social security wage credits during military service was something which required affirmative legislation on the part of Congress. In doing so, Congress was following what it considered to be sound policy. It is not for a court either to expand or to limit the application of this policy to meet the supposed equity of a particular case. The affirmative provision in the section is plainly limited by the excepting clause which in clear and unambiguous wording excepts the case where the veteran has received a naval benefit based *in whole or in part* on any portion of a definitely stated unitary period of time, i. e., July 25, 1947—January 1, 1954. The undisputed fact is that the veteran did receive such a benefit. Counsel for the defendant points out that the plaintiff, Mrs. Moncrief, received the benefits of the full $10,000 insurance policy provided for military and naval personnel called into the service, 38 U.S.C.A. § 851, but I have not considered this as in any way material to the point of construction herein involved.

It should also be noted that the final administrative decision by the Appeals Council is consistent with the applicable Regulations upon the subject. See 20 C.F.R. (1949 Ed. 1955 Supp.) §§ 404, 1350 et seq.

Counsel have not cited, and I have been unable to find, any judicial decision in point for this case. Plaintiff's counsel refers to Prentiss v. United States, 1952, 105 F.Supp. 989, 123 Ct.Cl. 225, which deals with the subject of military service credits under the Civil Service Retirement Act. But I do not find the case really in point here because it deals with an entirely different statute with a different history behind it.

For these reasons I conclude that the plaintiff's motion for a summary judgment must be *overruled,* and the defendant's motion for summary judgment must be *granted,* there being no material fact in dispute. The Clerk is accordingly instructed to enter judgment for the defendant with costs.