Opal L. **TAYLOR** and Mary A. Taylor,
Appellants,

v.

John W. **GARDNER**, Secretary of Health,
Education and Welfare, Appellee.

No. 18822.

United States Court of Appeals
Eighth Circuit.

March 26, 1968.

Van Oosterhout, Chief Judge, dissented.

Opal L. Taylor, St. Joe, Ark., for appellants.

Ned A. Stewart, Jr., Asst. U. S. Atty., Fort Smith, Ark., for appellee; Charles M. Conway, U. S. Atty., Fort Smith, Ark., was on the brief.

Before VAN OOSTERHOUT, Chief Judge, and GIBSON and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

This appeal caps the eighteen-year effort of Opal Taylor to secure Social Security benefits for herself and her permanently and totally disabled daughter, Mary Alice.

Mrs. Taylor has, with persistence but ineptness, pressed her claim before the Social Security Administration. She has been assisted in her unsuccessful effort by her Senator, her Congressman, the Veterans of Foreign Wars and by counsel in District Court.

There is no doubt as to the need of the mother and daughter, but we can no more award benefits because we sympathize with these needs than we can deny benefits because of an unwillingness to explore the complexities of the problem.

After threading our way through a maze of laws and regulations and searching a voluminous record, we conclude that the need of the Taylors for Social Security benefits is supported by their right to receive them.

The right of the mother and the daughter to receive Social Security benefits is based on wage credits earned by Darwin Taylor, husband and father, while in the United States Navy from 1928 to 1948.[1] It was the usability of these naval wage credits that gave rise to the dispute leading to this appeal.

The Social Security Administration has, from the outset, taken the position that the naval wage credits cannot be used because "the Bureau of Naval Personnel has determined that on the basis of this military or naval service, a benefit is payable by it [to Darwin Taylor] under another law of the United States." It adds that a benefit was, in fact, paid to Darwin Taylor[2] from May 7, 1948, the date of his transfer to the Fleet Reserve, to July 28, 1949. On that date, he attacked his wife without provocation and was shot and killed by her in self-defense.[3] The Secretary of Health, Education and Welfare adopted this view when the matter was presented to him on appeal.

Mrs. Taylor's answer to this contention was and is that Darwin Taylor was incompetent to apply for transfer to the Fleet Reserve, that the benefits that he received resulted from this application, and that since he was incompetent when he signed and submitted it, his election is not valid. The Secretary replies that this fact is immaterial. He is joined in this position by the District Court:

"    *    *    *    [I]n the opinion of the Court, it is entirely immaterial in the

1. "Benefits for veterans; definitions; determination of benefits

"(a) (1) For purposes of determining entitlement to and the amount of any monthly benefit * * * payable under this subchapter on the basis of the *wages and self-employment income of* any World War II veteran, * * * such veterans shall be deemed to have been paid wages * * * of $160 in each month during any part of which he served in the active military or naval service of the United States during World War II. This subsection shall not be applicable in the case of any monthly benefit or lump-sum death payment if—

*    *    *    *    *

"(B) a benefit * * * which is based, * * *, upon the active * * * naval service of such veteran during World War II is determined by any agency or wholly owned instrumentality of the United States *(other than the Veterans'*

*Administration)* to be payable by it under any other law of the United States or under a system established by such agency or instrumentality." (Emphasis added.)

Social Security Act, § 217(a), 64 Stat. 512 (1950), as amended, 42 U.S.C. § 417(a) (1964 ed.).

2. Naval "pay" of an undisclosed amount was received by Darwin Taylor during his life pursuant to Naval Reserve Act of 1938, § 204, 52 Stat. 1179, as amended, 60 Stat. 993 (1946). No such benefits were paid by the Navy to his wife or daughter. See, fn. 8, infra.

3. *Mrs. Taylor was tried but acquitted of criminal homicide in state court.* In the subsequent civil case involving the decedent's insurance policy, the court found that she shot him in self-defense. Taylor v. United States, 113 F.Supp. 143 (W.D. Ark. 1953), aff'd 211 F.2d 794 (8th Cir. 1954).

present context whether as of the time of his retirement a service man who has attained the period of service and meets the requirements for retirement under the law, possesses or lacks contractual or testamentary capacity. If his post-September, 1940, quarters of coverage are in fact included in calculating his retirement pay, it is only reasonable they cannot after his death be considered as quarters of coverage for Social Security purposes."

Taylor v. Gardner, 264 F.Supp. 610, 614 (W.D.Ark.1967).

We cannot agree with the Secretary or the District Court.

Receipt of retirement benefits was not automatic. An application to transfer to Fleet Reserve was necessary before the Navy could authorize the payment of retirement benefits. The Naval Reserve Act of 1938, § 204, 52 Stat. 1179, as amended, 60 Stat. 993 (1946). Darwin Taylor was not competent to make the application. It was, therefore, in our judgment, invalid.

It is generally recognized that an incompetent cannot execute a valid will, deed or contract,[4] make a change of beneficiaries in an insurance policy,[5] elect to surrender a life insurance policy,[6] or elect to take under or against a will.[7]

The general rule prohibiting an incompetent from making elections of the type indicated above has been recognized with respect to elections permissible under federal statutes providing benefits to servicemen. Thus, the Uniform Services Contingency Act of 1953, 67 Stat. 501 (1953), makes specific provisions for election by a person determined to be incompetent, § 3(c), 67 Stat. 502, as amended, 10 U.S.C. § 1431 (1964 ed.); the federal regulations provide a manner in which an incompetent may elect

whether to receive retirement pay or veterans' benefits, 38 C.F.R. § 3.750(b) (1957), even though the statute makes no specific provisions, see §§ 3104, 3105, 72 Stat. 1230, 1231 (1958), 38 U.S.C. §§ 3104, 3105 (1964 ed.); and the federal courts have held that a fiduciary may change beneficiary of a National Service Life Insurance Policy even though that right to do so is not specifically granted by statute or regulation. Murray v. United States, 107 F.Supp. 290 (E.D.Mich.1950), aff'd per curiam, 188 F.2d 362 (6th Cir.), cert. denied, 342 U.S. 816, 72 S.Ct. 30, 96 L.Ed. 617 (1951).

In *Murray*, the question was whether the guardian of an incompetent insured could change the beneficiary when the Act provided that such change must be made by the insured. In answering the question in the affirmative, the Court asked rhetorically:

"* * * [S]hould we not in such review take cognizance of the fact that here we have a unique situation not specifically covered or anticipated by either the law as written or the regulations as promulgated?"

Id. 107 F.Supp. at 293.

The reasoning and result of *Murray* was followed in United States v. Tighe, 229 F.Supp. 680 (S.D.Miss.1964). The Fifth Circuit affirming in part, Roecker v. United States, 379 F.2d 400 (5th Cir. 1967) (rehearing denied *en banc*), stated:

"* * * But the law does not provide for the eventuality that the veteran insured would become incompetent. We read the word 'competent' into the Act. Although the language of the regulation, read literally, requires the insured to sign the request for change of beneficiary, Congress and the VA surely did not mean to bind

---

4. See generally, 44 C.J.S. Insane Persons, §§ 98–121 (1945).

5. E.g., Taylor v. Taylor, supra.

6. E.g., Oregon Mut. Life Ins. Co. v. James, 166 Or. 336, 111 P.2d 1026 (1941) (see cases cited therein).

7. E.g., Ambrose v. Rugg, 123 Ohio 433, 175 N.E. 691, 74 A.L.R. 449 (1931), (see annotation 74 A.L.R. 542).

the United States to every whim of a lunatic. When it declared that the insured was to have the absolute right to change the beneficiary, Congress operated 'against the background * * * of [the] basic principle' in our jurisprudence that an incompetent may not validly dispose of his property. See, e. g., 3 Pomeroy, Equity Jurisprudence § 946 (5 ed. Symons 1941). Since it is evident, at least to this Court, that Congress did not intend such an anomalous result, we need not follow the strict language of the regulation. * * * "

Id. at 404 (footnote omitted).

The cases found to be most closely analogous to the precise facts in this case relate to an election by an incompetent school teacher to receive various benefits under the New York statute providing for teacher retirement benefits. Although the statute does not specifically deal with elections by incompetents, the New York courts have developed substantial case law in respect to the question. It has been uniformly established that where an incompetent has been committed as such, his election to receive a certain benefit in lieu of another is invalid. E. g., Feltner v. Teachers' Retirement Board, 235 App. Div. 207, 256 N.Y.S. 826 (1932). Indeed, such an election may only be made by a court of competent jurisdiction and cannot be made by the incompetent's committee, e. g., Moorhead v. Teachers' Retirement Board, 134 Misc. 123, 234 N.Y.S. 626 (1929), or by a relative, Hunn v. New York State Teachers' R. System, 264 App.Div. 188, 35 N.Y.S.2d 49, aff'd, 289 N.Y. 171, 45 N.E.2d 161 (1942). Furthermore, it makes no difference that the incompetent had not been formally adjudicated as such at the time of his election, or that he ever was. E. g., Schwartzberg v. Teachers Retirement Board, 273 App.Div. 240, 76 N.Y.S.2d 488, aff'd, 298 N.Y. 741, 83 N.E.2d 146 (1948); Beisman v. New York City Employees' Retirement Sys., 81 N.Y.S.2d 375 (N.Y.Sup.1948), rev'd on other grounds, 275 App.Div. 836, 88

N.Y.S.2d 411, aff'd, 300 N.Y. 580, 89 N.E.2d 876 (1949); Martin v. Teachers' Retirement Board, 70 N.Y.S.2d 593 (N.Y. Sup.1947).

The rule prohibiting an incompetent serviceman from making an election with respect to benefits conferred by federal statutes was recognized in an earlier case involving Mrs. Taylor. Taylor v. United States, 113 F.Supp. 143 (W.D.Ark.1953), aff'd, 211 F.2d 794 (8th Cir. 1954). There, Mrs. Taylor brought an action against the United States claiming that she was the rightful beneficiary of her husband's service life insurance policy. On April 23, 1944, the decedent had changed beneficiaries on the policy from his wife to his father. The District Court found that the decedent was incompetent on, before and after the date that he made the change and that the attempted change was ineffective. It stated:

"' * * * The mental capacity necessary for a valid change of beneficiaries by an insured is the same as that necessary to execute a valid will, deed, or contract.' "

Id. at 148.

Implicit in the decision of the Secretary and the District Court is the view that even if Darwin Taylor were incompetent, his choice was so clearly beneficial to himself and his family that it should not now be declared invalid. The District Court stated:

"The argument of plaintiffs would establish a rule of law that would permit a widow or dependent child of a retired service man to enjoy indirectly during the post-retirement lifetime of a spouse or father, the higher benefits resulting from including in his retirement income base the period of time after September 16, 1940, in active military service and then following his death to permit relevant quarters of military or Naval coverage treated as though they had been excluded from his retirement pay base and included in his Social Security quarters of coverage. This 'have

their cake and eat it, too,' contention find no support in the statute or regulations."

Taylor v. Gardner, 264 F.Supp. 610, 614 (W.D.Ark.1967).

We do not agree.

It has not been demonstrated before the Secretary, the District Court or this Court that his choice was in fact the best one for him and his family.[8]

If a fiduciary had examined the alternatives carefully, he might have determined that a disability benefit from the Veterans' Administration was more desirable than the "pay"[9] Darwin Taylor would receive as a member of the Fleet Reserve, and he might also have determined that Taylor, once having received "pay," would not have a right to waive it and elect to receive the VA disability benefits even though larger.[10]

8. Counsel was requested to submit a memorandum in regard to three questions. First, he was requested to determine what benefits were paid by the Navy to Darwin Taylor or his survivors. We are told that it is impossible to determine the decedent's retainer pay without knowing his service record and this was destroyed ten years from the date of his death. But, in any event, no benefits could have been paid by the Navy to the claimants under the applicable statutes. See, U.S.C.Cong. & Ad.News, 1953, p. 2257 (Uniformed Services Contingency Option Act of 1953, 67 Stat. 501 [1953], as amended, 10 U.S.C. §§ 1431–1444 [1964 ed.]). Second, he was requested to determine what benefits were paid to the claimants by the Veterans' Administration. The following schedule was submitted to us:

| MRS. OPAL L. TAYLOR, WIDOW | | SEPARATE PAYMENTS TO MRS. OPAL L. TAYLOR, AS CUSTODIAN OF MARY ALICE TAYLOR | |
| --- | --- | --- | --- |
| Amount | Effective Date | Amount | Effective Date |
| $ 54 | 7–29–49 | $77 | 5–22–64 |
| $ 60 | 7–01–52 | $80 | 1–01–67 |
| $ 63 | 10–01–54 | | |
| $ 75 | 7–01–60 | | |
| $121 | 4–03–63 | | |
| $165 | 5–22–64 | | |

Third, he was requested to determine what Social Security benefits would be payable to the claimants were we to hold that they are entitled to benefits. We are told that Mary Alice Taylor, if totally disabled, would be eligible for monthly benefits of about $53.00. Mrs. Taylor, not yet sixty, could only qualify for a mother's benefit for the same amount (subject to work deductions).

9. We note that the applicable statute at the date of Darwin Taylor's transfer to the Fleet Reserve provided that he was entitled to compensation designated simply as "pay." Prior to the Naval Reserve Act of 1938, the corresponding statute provided that the compensation was "retainer pay." 39 Stat. 590. See generally, French v. French, 17 Cal.2d 775, 112 P.2d 235, 134 A.L.R. 366 (1941). We note that presently the Act, as amended, again provides for "retainer pay."

10. It would not be unreasonable to have suspected that in 1948, the Veterans' Administration might have taken the position that VA benefits may not be awarded concurrently with "retainer pay," 57 Stat. 599 (1943), and that such pay may not be "waived" pursuant to 58 Stat. 230 (1944). Whether compensation received in the Fleet Reserve is termed "retainer pay" or merely "pay," it is arguably quite distinguishable from "retired pay" or "retirement pay," see, French v. French, supra. If it were meaningfully distinguishable (we are not passing on the point), it could not be waived since the applicable statute provided only for the waiver of "retirement pay." 58 Stat. 230 (1944). Accord, 38 U.S.C. § 3105 (1964 ed.). Thus, it could be at least argued that the receipt of pay, pursuant to transfer to the Fleet Reserve, would forever bar the veteran himself from receiving VA benefits.

Had he made such a determination, he obviously would have recommended an alternative leading to eligibility for VA disability benefits,[11] such as a discharge.

A fiduciary might also have determined that it would have been in the best interest of Taylor and his family if he had stayed in the Navy. It is obvious that if this decision had been made and if Taylor had died while in the service, the claimants would be clearly eligible to receive Social Security benefits. While it might be argued that the Navy would not have permitted Taylor to do this, we cannot eliminate it as a possibility. First, it had done so before 1943 and 1948, even though he was mentally ill during that period and, second, it did permit him to transfer to the Fleet Reserve, which was done without a finding of disability.[12]

■ Of course, a fiduciary might also have determined that it was advantageous for Taylor to apply for transfer to the Fleet Reserve. We do not believe, however, that it is proper for us to speculate as to the election which would have been made for Taylor. It is sufficient that reasonable alternatives other than the one chosen by the incompetent were available.

We might also speculate whether Taylor's choice of transferring to the Fleet Reserve was made by him without regard as to what was best for his wife and child. Cf., Martin v. Teachers' Retirement Board, supra. This speculation is, of course, not necessary to support our decision, but it is substantiated, at least in part, by Taylor's acts in eliminating his wife as a beneficiary of his insurance policy and by medical reports indicating that he was hostile to his wife and daughter.

When this case was submitted, we were of the opinion that the incompe-

tency of Darwin Taylor as of May 7, 1948, was not before this Court. However, in a memorandum submitted after oral argument,[13] counsel noted that the Secretary made no independent findings as to the deceased wage earner's competency as of that date, and urged that if we hold that § 217(a) of the Social Security Act, 64 Stat. 512 (1950), as amended, 42 U.S.C. § 417(a) (1964 ed.), does not bar the claimants, as a matter of law, we must remand for a further evidentiary hearing. He cited Foss v. Gardner, 363 F.2d 25, 27 (8th Cir. 1966), to support his position that it would be inappropriate for this Court to reverse without remanding for a finding in this regard.

We do not agree.

In *Foss,* we stated:

"After the trial court had affirmed the Secretary's finding that the claimant was not an employee, she filed a motion requesting the court to determine that she was eligible for benefits as a self-employed person. The court denied the motion upon the basis claimant had also failed to establish that she qualified in such capacity. We are inclined to agree with the Government's contention that the self-employment issue could not properly be raised at that stage of the proceeding. The statutory pattern is for the review of the Secretary's action. *The self-employment issue was not raised before the Secretary and hence, he had no opportunity to pass upon such issue.*

" * * * We believe that the finding that the work was done in fulfillment of a family obligation rather than for money-making purposes would equally apply to the self-employment claim and that no purpose would be served in remanding to the Secretary for a find-

---

11. The Veterans' Administration will award compensation for service connected disability even though the disability is not noted on the veteran's service records. 38 C.F.R. § 3.303(a) (1967 ed.).

12. The applicable statute provided that upon a finding of disability, a member of the Fleet Reserve was to be transferred to the Retired List. The Naval Reserve Act of 1938, § 206, supra.

13. See fn. 8, supra.

ing upon the self-employment issue." Ibid. (Emphasis added.)

■ We do not view *Foss* as supporting the Secretary's view. In *Foss*, the self-employment issue was not raised before the Secretary and he had no opportunity to pass on it. Here, the issue of competency was raised and the Secretary had an opportunity to pass on it, but failed to do so.

We believe that no purpose would be served in remanding to the Secretary for a finding on the issue of incompetency for the following reasons:

(1) The Hearing Examiner accepted the incompetency of Darwin Taylor as of the date in question as a fact. When Mrs. Taylor sought to introduce Veterans' Administration records to establish this fact independent, he interrupted:

"HEARING EXAMINER: Mrs. Taylor, for the record I think we are getting into the proposition that might be a little too complicated and possibly is not justified to gaining the ends that I understand you are trying to accomplish. I would infer from what you have said here today that you recognize clearly that your husband elected to receive naval retirement benefits (interrupted)

"CLAIMANT: Yes, sir.

"HEARING EXAMINER: to the exclusion of Veterans Administration or other benefits when he retired from the Navy back in about 1948, and that your purpose is to present evidence that he didn't know what he was doing at the time he made any such election. That he was mentally incompetent to make an election.

"CLAIMANT: Yes, sir. From 1943 to the day of his death.

"HEARING EXAMINER: And the the court [referring to 113 F.Supp. 143] has already declared that he was so incompetent. Need we belabor the matter any further?

"CLAIMANT: No, sir.

"HEARING EXAMINER: Do you agree that if I get the court decision by Judge Miller and the decision by the Eighth Circuit Court of Appeals that we will have covered that?

"CLAIMANT: Yes, sir.

"HEARING EXAMINER: All right, I don't see any point in my going through all the Veterans Administration medical records then if that is the situation. But now, if you feel it is needed to prepare a record here that will fully and adequately set out your case, I am willing to do it.

"CLAIMANT: I appreciate your statement Mr. Taylor, but we will take it from 1943." [14]

(2) Mrs. Taylor's claim was clearly based on the incompetency of her husband. If, when review was sought in District Court, the Secretary had any doubts as to his incompetency, he ought to have moved that the matter be remanded for further evidentiary hearings on this issue before he filed his answer. 42 U.S.C. § 405(g). He did not do so, proceeding on the grounds that the competency or lack of it was wholly immaterial. In a proceeding such as this, in which Mrs. Taylor and her daughter appeared *pro se* before the Hearing Examiner and in which the proceeding has already been inordinately delayed, we do not feel that it would be proper to order a new evidentiary hearing. In our view, this would be analogous to litigating the same factual situation over and over. Cf., Choy Yuen Chan v. United States, 30 F.2d 516 (9th Cir. 1929).

■ (3) We have carefully reviewed the entire proceeding before the Hearing Examiner and have reviewed the facts

14. Notwithstanding the Hearing Examiner's statement, Mrs. Taylor and her daughter introduced additional evidence as to the decedent's incompetence on the date in question. Mary Alice Taylor testified that the decedent was fired from his last job because of an attempted suicide; and that after her father's transfer to the Fleet Reserve, he was despondent, oblivious to the surrounding environment and complained of severe headaches.

as outlined by Judge Miller in Taylor v. United States, 113 F.Supp. 143 (W.D. Ark.1953), which was received in evidence, and believe that evidence as to Taylor's incompetency is clear and unequivocal. In this connection, we would note Judge Miller's language:

"The Court is convinced that it was decedent's insane delusion of marital trouble, wholly unfounded in fact, that prompted his action in changing the beneficiary of his policy, and that on April 23, 1944, he was acting under the influence of that delusion. Especially is this true in the light of the potential effect of the said change. It seems impossible that decedent in his right mind would take away from his wife, who had given her life to nursing and caring for their deformed, helpless and mentally retarded child while he was away at sea, and to making a home for him while he was on the mainland, and give to a father who had been married seven or eight times and with whom the decedent had not been particularly close.

"Stated differently, the Court believes that Dr. Fletcher was correct in her analysis of decedent's health record, i. e., that he was afflicted with a paranoid type of dementia praecox which was manifested by delusions, and that such condition was a chronic type of disorder which existed on, before and after April 23, 1944; and was particularly manifested by his delusion of marital trouble. *The fact that his condition was chronic, especially the delusion of marital discord, and continued long after it was first noted is evidenced by the very manner in which decedent met his death, i. e., while making an unprovoked attack upon the plaintiff. It is also to be remembered that until his death decedent registered various unfounded complaints or delusions, such as the belief that his hands and feet were paralyzed.*"

(Emphasis added.)

We hold that under the circumstances of this case, the receipt of benefits from the Navy does not bar the claimants from receiving Social Security benefits to which they are otherwise entitled.

We reverse and remand for further proceedings consistent with this opinion.

VAN OOSTERHOUT, Chief Judge (dissenting).

I would affirm the judgment of dismissal upon the basis of the well-considered opinion of Chief Judge Harris reported at D.C., 264 F.Supp. 610. Social Security benefits are created by and dependent upon federal statutes. Coverage must have a statutory basis. It is undisputed that the appellant-claimants must rely upon a portion of Mr. Taylor's period of naval service to establish coverage. Mr. Taylor's twenty years of active naval service ending on May 7, 1948, qualifies him as a World War II and a post-World War II veteran within the meaning of 42 U.S.C.A. § 417(a) (1) and (e) (1) and permits the use of naval service as a basis for Social Security coverage subject to the conditions imposed.

Each of said subsections by subdivision (B) expressly provides that such coverage is not applicable if "a benefit * * * which is based, in whole or in part, upon the active military or naval service of such veteran during World War II is determined by any agency * * * of the United States (other than the Veterans' Administration) to be payable by it under any other law of the United States * * *"

The exception just set out is clear and unambiguous and specifically excludes the use of the period of naval service to establish coverage for Social Security benefits under the facts here presented. The trial court's holding to such effect is supported by consistent administrative rulings and court decisions passing upon the issue. See Moncrief v. Hobby, D.Md., 133 F.Supp. 152, aff'd, Moncrief v. Folsom, 4 Cir., 233 F.2d 471; Sutherland v. Flemming, N.D.Ala., 189 F.Supp. 712.

Upon retirement from active service, Mr. Taylor was transferred to the Fleet Reserve. The trial court determined upon the basis of substantial evidence, which has not been controverted, that Mr. Taylor upon transferring to the Fleet Reserve received retirement pay, the amount of which was based in part upon the periods of naval service upon which reliance is based for Social Security coverage. Retirement pay on transfer to the Fleet Reserve is determined in the same way as retirement pay upon complete retirement. The statutory provisions applicable to the consequences of Mr. Taylor's transfer to the Fleet Reserve are found in the Naval Reserve Act of 1938, 52 Stat. 1175 et seq. Section 202 of such Act provides in part:

"That all transfers from the Regular Navy * * * to the Fleet Reserve * * * by the Secretary of the Navy, shall be conclusive for all purposes, and all members so transferred shall, from the date of transfer, be entitled to pay and allowances, in accordance with their ranks or ratings and length of service as determined by the Secretary of the Navy."

Exhibit 24 in evidence, certified by a naval officer, specifically states that active service after September 15, 1940, and before July 25, 1947, and that active service after July 24, 1947, was used to establish eligibility to receive retirement or retainer pay.

The allowance and payment of retirement compensation to Mr. Taylor under the Naval Reserve Act of 1938, based upon his entire naval service, by the terms of the statutes upon which the appellant relies precludes the use of any part of Mr. Taylor's naval service as a basis for Social Security Coverage.

The trial court correctly determined that the issue of Mr. Taylor's competency at the time of his transfer to the Fleet Reserve has no bearing upon the result. Thus there is no need to treat the competency issue dealt with in the majority opinion. In my view, incompetency of

Mr. Taylor at the critical time has not been so conclusively established as to warrant a determination by this court that incompetency existed as a matter of law.