**MURRAY v. UNITED STATES.**

Civ. No. 737.

United States District Court
E. D. Michigan, N. D.

Jan. 9, 1950.

ity. On October 3, 1944, plaintiff, as the wife of George Almy, Jr., filed a petition in the Probate Court for Genesee County to have him declared insane and a guardian appointed. The intervening third party, Citizens Commercial and Savings Bank, now administrator of his estate, was appointed guardian. George Almy, Jr., the husband, was a veteran and carried a government insurance policy payable to plaintiff, his wife.

On January 24, 1945, plaintiff started action for divorce and decree granted July 9, 1945, plaintiff being awarded the sum of $1 in full satisfaction of all claims in and to the property of her husband whether then owned or acquired thereafter. Later, January 21, 1946, the guardian, by court action, compelled plaintiff to turn over to it an insurance policy in a private insurance company which the veteran husband then also carried. Nothing was said about the government insurance policy, but during the life of the veteran, and after the decree of divorce was granted, the guardian, through the Probate Court received authority to change the beneficiary in that policy, and it was made payable to the veteran's estate. In the meantime plaintiff had remarried and notice of the intended change was not given or required under Michigan Probate law. The Veterans Administration accepted designation of the new beneficiary.

The veteran died March 11, 1949, and action was brought by plaintiff to recover the full amount of the policy on the theory that being the original beneficiary named therein, she was still entitled to the proceeds thereof because the guardian had no legal right to change the beneficiary. She contends further that the State of Michigan, which automatically upon divorce deprives the former wife of all right, title and interest in any insurance policy of her husband, was inoperative, because payment on all government insurance policies is controlled entirely by federal legislation not to be hampered or affected by local or state laws.

At the time the veteran was declared insane the law governing beneficiaries in government insurance policies read as follows:

Title 38, § 802, subsec. (g), U.S.C.A.:

"(g) The insurance shall be payable

Maurine L. Jones, Flint, Mich., for plaintiff.

Janet E. Kinnane, Asst. U. S. Atty., Bay City, Mich., for defendant United States.

McTaggart & Krapohl, Flint, Mich., for defendant Citizens Commercial & Savings Bank.

PICARD, District Judge.

The facts in this case pose a legal question for which we can find no direct author-

only to a widow, widower, child (including a stepchild or an illegitimate child if designated as beneficiary by the insured), parent (including person in loco parentis if designated as beneficiary by the insured), brother or sister of the insured. The insured shall have the right to designate the beneficiary or beneficiaries of the insurance, but only within the classes herein provided, and shall, subject to regulations, at all times have the right to change the beneficiary or beneficiaries of such insurance without the consent of such beneficiary or beneficiaries but only within the classes herein provided".

As the veteran's wife, therefore, she came within the permitted class.

Later, however, the law was changed and the following clause added:

"Provided, That the provisions of this subsection as to the restricted permitted class of beneficiaries shall not apply to any national service life-insurance policy maturing on or after August 1, 1946."

The policy in question matured after August 1, 1946, and while it will be noted that a "wife" is still within the class of permitted beneficiaries, by the new legislation the veteran may designate any one to receive the benefits of his National Service Life Insurance.

One would suppose that since plaintiff was not the wife of the deceased veteran at the time of his death she would have no claim on the proceeds of his government insurance policy, but the fact remains that she was still the designated beneficiary "Thelma M. Almy" in that policy and could have been re-named by the veteran (whether she was his wife or not) had he so desired or the same result would have followed if no other beneficiary was or could be so designated.

The question presented is—

Was plaintiff, the remarried widow of the deceased veteran, the legal beneficiary of George Almy, Jr.'s National Service Life Insurance policy at the time of his death, March 11, 1949, despite requested change of beneficiary (his estate) by his legal guard-

ian—which change was accepted, approved and recorded by the Veterans Administration?

And the answer turns upon two issues—

(a) Whether the divorce in 1945 terminated plaintiff's rights to proceeds of the insurance policy; or

(b) Whether a legal guardian, acting under order of the Probate Court, having jurisdiction, may effect change of beneficiaries for an incompetent insured veteran?

## Conclusions of Law.

The decided cases apparently tend to support plaintiff's contentions. There are several decisions holding that a divorced wife is entitled to the proceeds of her former husband's insurance even after her divorce if she was named as the beneficiary originally and the beneficiary never changed. Conklin v. U. S., 9 Cir., 27 F.2d 45; U. S. v. Smith, 9 Cir., 55 F.2d 141, 81 A.L.R. 926; Tannehill v. U. S., D.C., 82 F.Supp. 362.

It has also been held that a stepdaughter named beneficiary who lost such status when her mother divorced the veteran can recover, Benefield v. U. S., D.C., 58 F.Supp. 904, and that if the statute was amended so as to bring a beneficiary within the permitted class when previous to such amendment he could not be so designated, he could also recover. Small v. U. S., 71 App.D.C. 332, 110 F.2d 122, 127 A.L.R. 814; Dodd v. U. S., D.C., 76 F.Supp. 991.

Furthermore, there are cases holding that state laws cannot effect government insurance in any way, particularly in controlling those who are entitled to the proceeds as beneficiaries. Laws and regulations governing beneficiaries of government insurance are under control of the federal government and must be uniform. Admittedly chaos would exist if the Veterans Administration must follow one law for one state and a different law for another state. See Barton v. U. S., D.C., 75 F.Supp. 703.

However, in this case a somewhat different fact situation is presented and there are certain provisions of the act, regulations, state laws and decisions of our courts, all of which must be considered—

First, Sec. 25.131 of the Michigan Statutes Annotated, Comp.Laws 1948, § 552.101, provides as follows:

"Hereafter every decree of divorce shall determine all rights of the wife in and to the proceeds of any policy or contract of life insurance, endowment or annuity upon the life of the husband in which she was named or designated as beneficiary, or to which she became entitled by assignment or change of beneficiary during the marriage or in anticipation thereof, whether such contract or policy was heretofore or shall hereafter be written or become effective, and unless otherwise ordered in said decree such policy or contract shall thereupon become and be payable to the estate of the husband or to such named beneficiary as he shall affirmatively designate. * * *."

Construed favorably in Minnesota Mut. Life Ins. Co. v. Hendrick, 316 Mich. 253, 25 N.W.2d 189. But—and this is important—it is to be noted that in none of the states in which the above Conklin, Smith, Tannehill, Barton, Benefield, Small or Dodd cases arose could we find a similar provision to that found in the Michigan law. California definitely has none.

Second, Plaintiff's claim originated when she was the "wife" of the veteran. In Brown v. United States, 3 Cir., 164 F.2d 490 it was held that whether the beneficiary was the wife of insured was determined by the law of the state. In Michigan plaintiff was not the "wife" at veteran's death.

Third, In every instance above noted where the divorced wife was permitted to collect on her divorced husband's government policy where he had failed to change beneficiary, the divorced veteran was in possession of all his mental faculties and was able mentally and physically to make the change had he so desired. The court in those cases always held that if he had wanted to make a change in his beneficiary he could and should have. The courts have said that the presumption was that he had not so desired. But here we have a mental incompetent with a guardian appointed by the court to look after his affairs and particularly to preserve his estate.

Fourth, Sec. 27.3178(201); M.S.A., Comp.Laws 1948, § 703.1, specifically authorizes the Probate Judge to appoint a guardian for all persons insane, imbecilic, idiotic or "mentally incompetent to have the care, custody and management of their estate;" and section 27.3178(220), Comp. Laws 1948, § 703.20 requires the guardian to "manage the estate of his ward".

Fifth, Section 808 of the National Service Life Insurance Act gives the Administrator complete authority to promulgate regulations and "shall decide all questions arising" under that act. What he does "shall be final and conclusive on all questions of law or fact". In the case at bar the Administrator accepted the beneficiary designated by the guardian and desires to pay the proceeds of the policy to the veteran's estate. While his acts are subject to review by this court—.

Title 38 U.S.C.A. §§ 808 and 817; Chichiarelli v. United States, D.C., 26 F.2d 484; United States v. Johnson, D.C., 46 F.2d 549; McKewen v. McKewen, 5 Cir., 165 F.2d 761; should we not in such review take cognizance of the fact that here we have a unique situation not specifically covered or anticipated by either the law as written or the regulations as promulgated?

Sixth, The holding in the above cases and Vol. 2 Couch Cyclopedia of Insurance Law, Sections 315a, 328 et seq., to the effect that the government alone may complain of the insufficiency of a request for change of beneficiary, hence any formalities necessary to effect such change may be waived by it.

But what right has a guardian to change the beneficiary of an insured person? Regulation 10:3447, promulgated by the Administrator as R & P R 3447 (C.F.R.1946 Supplement Title 38) and the act itself provides that the insured from time to time and without the knowledge or consent of the beneficiary, may make a new selection. And that right is not directly conferred upon anybody else but the insured.

We have been referred to three cases on this point. In Kay v. Erickson, 209 Wis. 147, 244 N.W. 625, 84 A.L.R. 361, the court held that a guardian had no authority to change the beneficiary in an insurance policy but the case is easily distinguishable from the one at bar. In Kay v. Erickson, (supra) there was no order of the Probate Court having jurisdiction of the ward and control of the guardian to make the change. In the case at bar there is a specific order granting such authority. The same is true in Oregon Mutual Life Insurance Company v. James, Or., 111 P.2d 1026 where the act of the guardian in exercising a discretionary right to surrender an insurance policy and demand the cash surrender value thereof was declared ineffective in the absence of an order of the court. In In re Degnan, 122 N.J.Eq. 470, 194 A. 789, however, a case involving substantially similar facts to the one at bar, where the wife after appointment of herself as guardian had her marriage annulled and then resigned as guardian, a new one being appointed, the court held that a Probate Court

> "* * * has inherent power to act as appears for best interest of incompetent person in matters affecting incompetent's property, and has specific power to direct incompetent's guardian to exercise a power that is vested in incompetent or subject to incompetent's consent."

Page 791 of the opinion contains these significant words—

> "When this court is asked to affirm or reject the exercise by a guardian of power vested in his lunatic ward, our Court of Errors and Appeals has declared the rule to be 'that the court do that * * * which it is reasonable to believe the lunatic himself would do if he had capacity to act.'"

With that statement in mind we revert briefly to the facts before us. Plaintiff had her husband deemed incompetent and a guardian appointed. She obtained a divorce and was awarded $1 in lieu of all rights, title and interest in any part of his property. She followed this by her remarriage and now, after four years, desires to share in the proceeds of the insurance policy that was kept for the ward by the guardian on order of the same Probate Court to which plaintiff had gone in the first place for relief from future association with her husband.

We cannot believe that the federal act anticipated that where a veteran is mentally insufficient to act for himself his guardian must either accept the surrender value of the veteran's insurance, if there is any, to prevent the proceeds thereof from going to the veteran's former wife, or remain helpless with the knowledge that the beneficiary's death must precede his ward's before those who chose to help bear his burdens may profit from his estate. In other words, if plaintiff's conclusion is correct the veteran had to either cash in on his policy or continue with his divorced wife as beneficiary. Must he and his rights and desires be suspended in this uncertainty or may the Probate Court act to preserve his property?

We believe that not only may the Probate Court act but that it should and did act in this case properly and legally.

■ This court is not prohibited from following the law of the State of Michigan if that law does not seek to usurp powers of the federal government. Furthermore, there is no usurpation here. The National Service Life Insurance Act, 38 U.S.C.A. § 801 et seq., is deficient and such deficiency may be corrected by the state law. Furthermore, the Veterans' Administrator accepted the beneficiary and he alone could complain. He undoubtedly recognized that there existed no repugnancy.

■ We hold, therefore, that the beneficiary selected by the guardian shall receive the proceeds from the National Service Life Insurance policy of the veteran, because when the guardian acted by order of the Probate Court this had the same legal effect as though the insured himself had made the new designation.

In arriving at this conclusion we believe that we have done equity as well as followed the law; that it was what the veteran would have done had he been mentally able to act for himself; and that our hold-

ing is not in variance nor incompatible with any of the cases cited by plaintiff. Here the facts are different.

Counsel will prepare the proper judgment for this court's signature.