Aida ELIAS, Appellant,

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 95–237.

United States Court of Veterans Appeals.

May 16, 1997.

Aida Elias, pro se.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; R. Randall Campbell, Deputy Assistant General Counsel; and Michael A. Leonard, Washington, DC, were on the brief, for appellee.

Before NEBEKER, Chief Judge, and IVERS and STEINBERG, Judges.

IVERS, Judge:

The appellant, the widow of veteran Sergio G. Elias, appeals a January 25, 1995, decision of the Board of Veterans' Appeals (BVA or Board) denying her entitlement to the entire proceeds of the veteran's National Service Life Insurance (NSLI) policy. *Aida Elias,* BVA 95–01249 (Jan. 25, 1995). The appellant claims that the veteran lacked testamentary capacity at the time he changed the designated beneficiary of his insurance policy. Several issues in this case are ones of first impression. The Court has jurisdiction over

the case pursuant to 38 U.S.C. § 7252(a). For the reasons set forth below, the Court will affirm the Board's January 1995 decision.

## I. FACTUAL BACKGROUND

The veteran served on active duty in the United States Navy from September 1942 to October 1945. Record (R.) at 16. In July 1965, the veteran obtained a $10,000.00 NSLI policy naming the appellant as the sole principal beneficiary and the veteran's brother, Rene Elias, and cousin, Adolpho (or "Adolphito") Delaparte, as co-contingent beneficiaries. R. at 22–25.

In July 1971 and September 1973, the veteran filed two new designation of beneficiary forms but did not change the previously named beneficiaries or their assigned shares. R. at 27–28, 30–31. On June 5, 1980, the veteran filed another beneficiary designation form in which he again named the appellant as the sole principal beneficiary but eliminated his cousin as a contingent beneficiary, leaving only his brother, Rene. R. at 35–36. The veteran filed another change in beneficiary designation on September 2, 1980, naming the appellant as the "sole" principal beneficiary, but only for one-half share of the proceeds, and Rene as the "sole" contingent beneficiary, for the remaining one-half share. R. at 38–39.

The veteran submitted a new beneficiary designation on September 11, 1980 (received by VA on September 22, 1980), naming the appellant and Rene as co-principal beneficiaries, each receiving one-half share, and two nieces and a stepson as co-contingent beneficiaries each receiving one-third share. R. at 41–42. During the period between December 1980 and September 1991, the veteran applied for several policy loans and provided instructions for their repayment and the use of the dividends earned. R. at 44, 47, 50–51, 53–54, 56–57, 59–60, 68, 71, 74, 77, 80.

The veteran died on October 9, 1991. R. at 83–84. The NSLI proceeds were calculated to be $5,198.80 at the time of death (the face value was reduced as the result of policy loans taken by the veteran). R. at 87. On October 15, 1991, the appellant informed VA that the veteran had died. R. at 83. Soon after, VA received a claim for a one-half share of the proceeds from Rene. R. at 95, 109. A letter from VA, dated October 25, 1991, informed the appellant that she was not the sole principal beneficiary to the life insurance policy but was entitled to only a one-half share. R. at 93. A lump-sum payment, representing one half of the proceeds, was paid to the appellant on October 30, 1991. R. at 105.

On November 13, 1991, the appellant filed a statement protesting the payment of one half of the NSLI proceeds to Rene. R. at 113. VA sent Rene a letter, dated November 6, 1991, informing him that the appellant was claiming all of the proceeds and that there would be a delay in settling his claim. R. at 119.

The appellant filed a statement dated November 18, 1991, claiming that the veteran was not of "sane mind" at the time he executed his beneficiary designation on September 11, 1980. R. at 127–28. In January 1992, the appellant was sent copies of the veteran's service medical records (R. at 146–48, 150–54), showing that the veteran experienced periodic states of depression and other health problems while in service. R. at 154. He was rated as service connected, at 50% disability, for psychoneurosis at the time of his discharge. R. at 20.

By a letter dated January 15, 1992, the appellant informed VA that the veteran had been a "very distressed" person and incapable of making decisions for himself. R. at 156. She submitted two lay statements from persons who attested that the veteran was depressed and changed moods often. R. at 157, 158–59. Also submitted were statements from Dr. Emanual Altcheck who referred to the veteran as being "totally incapacitated and permanently disabled from 1980 on" and identified various physical ailments that he found the veteran to have. R. at 163.

VA responded to the appellant on February 27, 1992, informing her that it specifically needed treatment records concerning the veteran's mental status "around September 11, 1980," in order to make a decision on the veteran's competency. R. at 171. VA also

sent a letter, on that same date, to Mrs. N.M. Velazquez, a former employee of a VA regional office (RO) who had signed as a witness to the veteran's signing of his last change of beneficiary form. R. at 173. VA asked her for information regarding the veteran's behavior and circumstances at the time of the last change. *Ibid.* No response was received from Mrs. Velazquez.

In March 1992, the appellant submitted another statement from Dr. Altcheck who stated that he had seen the veteran several times for various physical disabilities and that the veteran was "totally incapacitated" from April 1980 to September 1980. R. at 177. Dr. Altcheck did not comment on the veteran's mental status. *Ibid.* In response to that letter, VA mailed Dr. Altcheck a letter dated March 17, 1992, specifically asking for a statement regarding the veteran's mental condition. R. at 179. No other statements were received.

On August 20, 1992, VA sent a letter to the appellant denying her claim to the full amount of the proceeds from the veteran's NSLI policy. R. at 223–24; *see also* R. at 228. In that letter, VA stated that it had received no evidence to conclude that the veteran was mentally incapable of making the change in beneficiary designation on September 11, 1980. R. at 223.

The appellant filed a Notice of Disagreement (NOD) on September 23, 1992, claiming that her husband was "mentally unsound" at the time that he changed his beneficiary on September 11, 1980. R. at 235–36. She perfected her substantive appeal with the Board in December 1992. R. at 252. Because no appeal was received by the RO within the 30–day appeal period (38 U.S.C. § 7105A(b)), the remaining one-half share was paid to Rene. R. at 250.

VA certified the case to the BVA on two issues: (1) timeliness of filing of the substantive appeal; and (2) entitlement to the remaining one-half share of the NSLI proceeds. R. at 259.

The BVA issued its decision on January 25, 1995, finding that the appeal had been timely filed but that the veteran possessed testamentary capacity on September 11, 1980. The BVA therefore denied the appellant's claim. *Elias,* BVA 95–01249, *supra;* R. at 1–9. The appellant appealed to this Court.

## II. ANALYSIS

### A. Standard of Review

 Regarding the considerations applicable to determining a veteran's testamentary capacity to execute changes of beneficiary, 38 C.F.R. § 3.355 (1996) provides:

When cases are referred to a rating agency involving the testamentary capacity of the insured to execute designations or changes of beneficiary, or designations or changes of option, the following considerations will apply:

(a) Testamentary capacity is that degree of mental capacity necessary to enable a person to perform a testamentary act. This, in general, requires that the testator reasonably comprehend the nature and significance of his act, that is, the subject and extent of his disposition, recognition of the object of his bounty, and appreciation of the consequence of his act, uninfluenced by any material delusion as to the property or persons involved.

(b) Due consideration should be given to all facts of record, with emphasis being placed on those facts bearing upon the mental condition of the testator (insured) at the time or nearest the time he executed the designation or change. In this connection, consideration should be given to lay as well as medical evidence.

(c) Lack of testamentary capacity should not be confused with insanity or mental incompetence. An insane person might have a lucid interval during which he would possess testamentary capacity. On the other hand, a sane person might suffer a temporary mental aberration during which he would not possess testamentary capacity. There is a general but rebuttable presumption that every testator possesses testamentary capacity. Therefore, reasonable doubts should be resolved in favor of testamentary capacity.

Questions respecting the proper beneficiaries under NSLI policies are governed by federal

law rather than by state law. *See United States v. Donall,* 466 F.2d 1246, 1247 (6th Cir.1972); *see also Taylor v. United States,* 113 F.Supp. 143, 147 (W.D.Ark.1953). Although the issue of testamentary capacity is, ultimately, a question of law, the underlying factual determinations necessary to decide the issue involve questions of fact subject to the "clearly erroneous" standard of review. 38 U.S.C. § 7261(a)(4). Under the "clearly erroneous" standard, "if there is a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, [the Court] cannot overturn them." *Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990).

### B. Application of the Law to the Facts

■ The appellant claims that the veteran lacked testamentary capacity to execute a change of beneficiary on September 11, 1980, and, therefore, contends that she is entitled to all of the proceeds from the NSLI policy. The appellant asks that she be given the "benefit of the doubt" in the review of her claim. 38 U.S.C. § 5107(b) ("[w]hen ... there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt ... shall be given to the claimant"). However, the appellant cannot be entitled to the benefit of the doubt here because there are *two* claimants in this case. The benefit of the doubt cannot be given to both the appellant and Rene.

■ Under the regulation governing testamentary capacity for insurance purposes, reasonable doubt is resolved expressly in favor of testamentary capacity: "There is a general but rebuttable presumption that every testator possesses testamentary capacity. Therefore, reasonable doubts should be resolved in favor of testamentary capacity." 38 C.F.R. § 3.355(c). The Court has held that the question whether a presumption has been rebutted in a particular case is a question of law that the Court determines de novo under 38 U.S.C. § 7261(a)(1). *Bagby v. Derwinski,* 1 Vet.App. 225, 227 (1991). To rebut the presumption, the appellant must show a

lack of testamentary capacity by a preponderance of the evidence. *See Smith (Cynthia) v. Derwinski,* 2 Vet.App. 241, 244 (1992) (where statute (38 U.S.C. § 105) establishes a presumption in the claimant's favor, a preponderance of the evidence must be offered to show that an exception applies). *But cf. Bagby, supra* (clear and unmistakable evidence is required to rebut a presumption of soundness pursuant to express provision of 38 U.S.C. § 5107). Applying de novo review in this case, the Court holds that the appellant has not offered sufficient evidence to rebut the presumption under the regulation.

The appellant has provided no medical evidence that the veteran lacked the mental capacity to execute a beneficiary change in September 1980. Although Dr. Altcheck stated that the veteran was "totally incapacitated" physically, he did not comment on the veteran's mental status and the veteran was never rated incompetent to handle his own affairs. Numerous policy loan applications filed after the September 1980 change showed that the veteran was aware of the details of his insurance policy and that he had the ability to "comprehend the nature and significance of the act" under § 3.355(a) with respect to such details.

In addition, a Veterans Service Officer from the RO where Mrs. Velazquez had worked informed VA that it was the RO's policy to have a Veterans Benefits Counselor (VBC) present as a witness to the signing of a change of beneficiary designation and that a VBC was not to sign the document if he or she believed that "the veteran is either under duress or demonstrates a degree of [mental] instability." R. at 219. In light of this policy, Mrs. Velazquez's signature on the form seems to indicate that she believed the veteran to be mentally stable at the time the veteran made the change in designation. *See* 38 C.F.R. § 3.355(b) (consideration to be given to facts at time of change; lay evidence acceptable).

■ The only evidence tending to support the appellant's contentions are two lay statements from acquaintances of the veteran noting that the veteran appeared depressed and often changed moods. R. at 157–59. The Board properly rejected these statements as

having low probative value because the acquaintances lacked any specific knowledge of the veteran's mental state at the time he executed the change in beneficiary and, furthermore, were not competent to render a medical opinion regarding the state of the veteran's mental health. *See Espiritu v. Derwinski,* 2 Vet.App. 492, 494–95 (1992). On the bases of the record presented, the Court holds that there was insufficient evidence (indeed, no evidence) to rebut the presumption that the veteran possessed the requisite testamentary capacity on September 11, 1980, and will thus affirm the BVA decision. *See* 38 U.S.C. § 7261(a)(1).

### III. CONCLUSION

For the reasons stated, the Court AFFIRMS the Board's January 25, 1995, decision.