Elizabeth J. CURTIS, Appellant,

v.

Togo D. WEST, Jr., Acting Secretary
of Veterans Affairs, Appellee.

Robert E. Curtis II, Intervenor.

No. 96–582.

United States Court of Veterans Appeals.

April 3, 1998.

Andrew M. Hemenway, Juneau, AK, was
on the brief for appellant.

Mary Lou Keener, General Counsel; Ron
Garvin, Assistant General Counsel; R.
Randall Campbell, Deputy Assistant General
Counsel; and Michael Leonard, Deputy Assistant General Counsel, Washington, DC,
were on the brief for appellee.

Before FARLEY, HOLDAWAY, and
IVERS, Judges.

IVERS, Judge:

The appellant, the ex-wife of a deceased veteran, appeals from a January 30, 1996, Board of Veterans' Appeals (BVA or Board) decision which denied the appellant entitlement to the proceeds of the veteran's National Service Life Insurance (NSLI) policy. The intervenor, the veteran's son, submitted an informal brief contending that the appellant was not entitled to the proceeds of the veteran's NSLI policy. The question before the Court is whether the holder of a general power of attorney (GPA) can change the beneficiaries of an NSLI policy. For the reasons stated below, the Court answers the question in the negative and will affirm the BVA's January 30, 1996, decision.

## I. FACTS

The veteran, Robert E. Curtis, served on active duty with the U.S. Army Air Corps from November 1942 to December 1945 and with the U.S. Air Force from November 1946 to September 1948. Record (R.) at 21, 36. In January 1942 the veteran applied for a $2,000 NSLI policy. The policy was effective in January 1942, and the veteran named his mother as the principal beneficiary and his sister as the contingent beneficiary. R. at 21.

The veteran applied for a $10,000 NSLI policy, which replaced the previous policy and became effective February 1942. The principal and contingent beneficiaries remained the same as on the previous policy. R. at 24. In September 1943 (R. at 27), December 1944 (R. at 30), May 1948 (R. at 33), December 1949 (R. at 40), and October 1964 (R. at 45), the veteran changed beneficiaries to include as the principal beneficiaries, at different times, his mother, sister, and his first two wives.

In April 1990, the veteran completed a Designation of Beneficiary naming the appellant as the principal beneficiary and the intervenor as the contingent beneficiary. R. at 48. In August 1990 the veteran changed the principal beneficiary to the intervenor and the contingent beneficiary to his daughter-in-law, Stephanie Curtis. R. at 51. In November 1990 the appellant completed a Designation of Beneficiary form, naming herself as the principal beneficiary and the intervenor as the contingent beneficiary. She stated, "My husband and I are still married. He wants me re-instated as beneficiary. Hes' [sic] had a light stroke. I'm sending a copy of our G.P.A. for your records." R. at 54. The appellant signed the veteran's name in the "signature of insured" space and her name as the "witness." That designation was "entered by VA" on November 27, 1990. Id. The veteran died on May 5, 1992. R. at 57. At the time of his death, the NSLI policy was worth $10,550.80. R. at 65.

The VA Insurance Center wrote the appellant and the intervenor in June 1992 seeking information regarding the circumstances surrounding the execution of the November 1990 change in beneficiary and requesting a copy of the GPA. R. at 67–68. That same month, Rick Richter, the personal representative of the veteran's estate, requested payment of the NSLI policy proceeds. R. at 70. The claim was denied in July 1992. R. at 79.

The intervenor submitted a letter to the VA Insurance Center in July 1992. He indicated that the veteran had suffered a slight stroke in October 1990 that impaired his speech and limited his writing capabilities. He explained that the veteran "maintained complete mental facilities [sic], and was very capable of making sound decisions as well as signing his own name." He alleged that the appellant had abused the GPA and that she had emptied the veteran's bank accounts, "limiting out all his charge cards, changing all insurance and stock beneficiaries, and then left the state to an unknown destination leaving a letter stating that she never wanted to see him again." The intervenor contended that he did not believe that his father wanted to change the beneficiary of the NSLI policy. He also reported that the veteran and the appellant were divorced in July 1991. R. at 74.

In August 1992 the appellant stated that the form used for the November 1990 change of beneficiary had been requested by the veteran and that she had executed that form under his direction and in accordance with his instructions. She indicated that the August 1990 designation removing her as prin-

cipal beneficiary was accomplished by the veteran's second wife during a temporary separation between the veteran and the appellant and that, after the separation ended, he wanted the appellant reinstated as the principal beneficiary. A copy of the GPA was submitted. R. at 81–85.

The GPA purported to grant the appellant the power to do all acts which the veteran could do with regard to specific categories pursuant to Alaskan law, to include "insurance transactions," "estate transactions," "gift transactions," and "benefits from government programs and military service." R. at 83. The GPA was executed on November 16, 1990. R. at 85.

In August 1992 Mr. Richter, the estate's representative, protested the designation of Elizabeth Curtis as beneficiary, arguing that the change of beneficiary in November 1990 was not valid. He stated that, at the time of the November 1990 change of beneficiary, the veteran was physically and mentally capable of signing his name and that the veteran "insisted on executing all documents personally." Additionally, he noted that the veteran had not authorized the execution of the change in beneficiary nor was he aware that the form had been executed. He revealed that the appellant did not have the authority to act nor had she been given permission to act on behalf of the veteran. Mr. Richter also noted that the form was not attested to by a third party. R. at 90.

In September 1992 the VA Insurance Center requested a copy of the videotape of the GPA. R. at 97. In October 1992 the videotape was received and reviewed. R. at 99, 101, 103. That same month, further information regarding the making of the tape of the GPA and a transcript of the tape were requested from Robert L. Manley, Esquire. R. at 103. In response, Mr. Manley indicated that the tape had not been transcribed. He revealed that the veteran, the appellant, he, and a court reporter were present during the taping. He asserted that, pursuant to Alaska Statute 13.26.344(f)(2), the appellant had the power, under a GPA, to change the beneficiary on the insurance policy even though she and the veteran were subsequently divorced. R. at 105–06. Also, the interve-

nor's mother, Gayle W. Hind, the veteran's second wife, asserted her belief that the veteran did not intend for his third wife, the appellant, to receive the proceeds from the NSLI policy. R. at 109.

In November 1992 the Insurance Center requested an opinion from the District Counsel, Anchorage, Alaska, regarding whether the appellant, acting under a GPA, had the authority to change the beneficiary of the veteran's NSLI policy. R. at 114. The District Counsel concluded,

> [A] change of beneficiary signed by [a] person holding a general power of attorney which does not contain a specific change of beneficiary for the principal's NSLI policy is not effective. Federal law requires that the insured designate the beneficiary. It does not allow the insured to designate someone else to designate the beneficiary. Since the power of attorney in this case does not contain a specific change of beneficiary, the agent's beneficiary designation dated 11–22–90 was not effective.

R. at 124.

In an undated letter, the court reporter indicated that, due to the amount of time that had passed, she could not comment regarding the circumstances surrounding the execution of the GPA. She submitted a copy of the videotape of the GPA. R. at 130.

A January 1993 Administrative Decision determined that the beneficiary designation dated November 22, 1990, was not valid and that the intervenor was the beneficiary of the NSLI proceeds. R. at 135. The parties were informed of this decision. R. at 139–41.

In February 1993 the appellant's representative wrote the VA Insurance Center, protesting the decision. He argued that, for purposes of federal law, the signature of the agent is the equivalent of the signature of the principal; that state law governed the question of the effectiveness of an agent's act to bind the principal, and under Alaska law, the agent's signature was binding on the principal; and that VA was estopped from denying the claim because VA failed to reject the change of designation at the time it was filed. R. at 143.

A Supplemental Administrative Decision confirmed the previous decision denying the appellant's claim to the proceeds of the NSLI policy. R. at 146. The parties were informed of this decision. R. at 150–51. The appellant submitted a Notice of Disagreement. R. at 153. A Statement of the Case was issued. R. at 156–60. The appellant submitted a substantive appeal. R. at 162–65.

On January 30, 1996, the BVA rendered the decision currently on appeal. The BVA determined that the veteran's son, the intervenor, was the last-named beneficiary of the veteran's NSLI policy and was the person entitled to the full proceeds of the policy. R. at 9.

## II. ANALYSIS

### A. State v. Federal Law

The Court reviews questions of law de novo. *King v. Brown,* 5 Vet.App. 19 (1993). The first question the Court must answer is whether state or federal law controls. The construction of a life insurance policy issued by the United States is governed by federal law. *Roecker v. United States,* 379 F.2d 400, 404 (5th Cir.1967) (citing *Wissner v. Wissner,* 338 U.S. 655, 70 S.Ct. 398, 94 L.Ed. 424 (1950)). "Questions respecting the proper beneficiaries under NSLI policies are governed by federal law rather than state law." *Elias v. Brown,* 10 Vet.App. 259, 262–63 (1997) (citing *United States v. Donall,* 466 F.2d 1246, 1247 (6th Cir.1972); *Taylor v. United States,* 113 F.Supp. 143, 147 (W.D.Ark.1953)); *see also Wolfe v. Gober,* 11 Vet.App. 1 (1997) (terms of an NSLI contract to be construed by federal law).

The appellant argues that, "[w]hile federal law governs most questions arising regarding the substantive aspects of NSLI, it does not entirely displace state law." Appellant's Brief (Br.) at 7. The appellant cites to *Murray v. United States,* 107 F.Supp. 290 (E.D.Mich.1950), *aff'd,* 188 F.2d 362 (6th Cir.), *cert. denied,* 342 U.S. 816, 72 S.Ct. 30, 96 L.Ed. 617 (1951), and *Roecker, supra,* for this proposition. *Id.* However, these cases are distinguishable from the instant case. In *Murray* and *Roecker,* the veteran was deemed mentally incompetent by a Court and a guardian was appointed. In *Murray,* the Court held that the beneficiary selected by the guardian would receive the NSLI proceeds because the guardian had acted by order of the Probate Court and that this had the same effect as if the insured himself had made the new designation. *Murray,* 107 F.Supp. at 294. In *Roecker,* the Court was to decide which law to apply when the federal statute is silent as to the manner in which a court-appointed guardian may change the beneficiary of an incompetent's NSLI policy. *Roecker,* 379 F.2d at 404. In the instant case, the veteran was not deemed incompetent by a court. Nothing in the record before the Court indicates that VA, the veteran's family, (including the appellant) or any other authority deemed the veteran in need of a legally appointed guardian. In fact, the veteran's son and Mr. Richter stated that the veteran was mentally competent and capable of making sound decisions and signing his name. R. at 74, 90.

As to the appellant's assertion that federal law "does not entirely displace state law," where a state law conflicts with a federal statute, federal law controls. *Roecker,* 379 F.2d at 405. Here, there is a conflict because Congress and VA have provided procedures for the changing of beneficiaries on an NSLI policy when a GPA is involved. Pursuant to 38 U.S.C. § 1917(a), the insured shall have the right to designate the beneficiaries of insurance maturing on or after August 1, 1946, and, subject to regulations, has the right to change the beneficiaries of that insurance without the consent of the beneficiaries. *See also* 38 C.F.R. § 8.22 (1997). In addition, 38 C.F.R. § 8.22 (formerly § 8.47) unambiguously provides,

A change of beneficiary or optional settlement to be effective *must be made by notice in writing signed by the insured* and forwarded to the Department of Veterans Affairs by the insured or designated agent, and must contain sufficient information to identify the insured.

Emphasis added.

"[W]hen a reviewing court 'find[s] the terms of a statute [or regulation] unam-

biguous judicial inquiry is complete except in rare and exceptional circumstances.'" *Clarke v. Brown*, 10 Vet.App. 20, 22 (1997) (quoting *Smith v. Derwinski*, 2 Vet.App. 429 (1992) quoting *Demarest v. Manspeaker*, 498 U.S. 184, 111 S.Ct. 599, 112 L.Ed.2d 608 (1991)). The Court in *Gardner v. Derwinski*, stated that the "plain meaning must be given effect unless a 'literal application of [the] statute [or regulation] will produce a result demonstrably at odds with the intention of its drafters.'" *Gardner*, 1 Vet.App. 584, 586–87 (1991) *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed.Cir.1993), *aff'd*, 513 U.S. 115, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994); *see also Clarke*, 10 Vet.App. at 22. The Secretary of VA has the power to promulgate all rules and regulations which are necessary and appropriate to "carry out the laws administered by [VA]." 38 U.S.C. § 501(a). Regarding the NSLI, Congress empowered the Secretary with the discretion to make policy "provisions as may be found to be reasonable and practicable." 38 U.S.C. § 1906. Therefore, the designation of a beneficiary for an NSLI policy is covered by federal law and the plain meaning of § 8.22 requires that the veteran give notice in writing, signed by him, to change his beneficiary.

## B. November 1990 Beneficiary Designation

 The validity of the November 1990 beneficiary change is decided under federal law which requires a change of NSLI beneficiary to be signed by the veteran. The record shows that it was the appellant, not the veteran, who signed the change in beneficiary form and therefore the change was not valid.

The courts have held that where the intent of the insured is manifest, the court will brush aside all legal technicalities to effectuate that intent. *United States v. Pahmer*, 238 F.2d 431 (2nd Cir.1956); *Collins v. United States*, 161 F.2d 64 (10th Cir.1947). However, there must be evidence of this intent, coupled with an affirmative act by the insured to effectuate that intent. *Jones v. Brown*, 6 Vet.App. 388, 390 (1994); *Young v. Derwinski*, 2 Vet.App. 59, 61 (1992). This record contains no evidence of the veteran's intent and thus, there is neither need nor

basis for the Court to take the unusual steps to effectuate that intent suggested by *Pahmer* and *Collins*. The Secretary and the appellant concede that the veteran's intent was not clear. For example, the record reflects that the veteran had an on again, off again relationship with the appellant. While the intervenor's and Ms. Hind's statements might be characterized as self-serving or biased, the estate's personal representative, Mr. Richter, stated that the veteran had not authorized any change in beneficiary nor had the veteran been aware that a change in beneficiary form had been executed. R. at 74, 90, 109. There is no unbiased evidence in the record to indicate that the veteran intended a change in beneficiary after the August 1990 beneficiary change. R. at 51.

 The November 1990 Designation of Beneficiary was "entered" by an employee of VA. R. at 54. There is no indication in the record indicating that the appellant or the veteran were informed, at that time, that the beneficiary change using a GPA was not valid. The Secretary speculates that this may be true because the appellant signed the veteran's name rather than her own name under "signature of insured" and that the VA employee may have thought that the veteran had actually signed the form despite the remarks regarding a GPA. Secretary's Br. at 15–16. The Court will not speculate. However, the failure of VA in following the proper procedure cannot be relied upon to estop VA from denying monetary benefits. *McTighe v. Brown*, 7 Vet.App. 29, 30 (1994) (citing *OPM v. Richmond*, 496 U.S. 414, 424, 110 S.Ct. 2465, 2471, 110 L.Ed.2d 387 (1990)). Nor should the failure of VA to follow its procedures be the reason for the denial of benefits to which the intervenor is entitled under the veteran's NSLI policy. *See Daniels v. Gober*, 10 Vet.App. 474, 480 (1997) ("[T]his Court is precluded from awarding benefits on the basis of equitable estoppel").

## III. CONCLUSION

For the reasons stated above, the BVA's January 30, 1996, decision is AFFIRMED.