Virginia M. KLEKAR, Appellant,

v.

Togo D. WEST, Jr., Secretary of
Veterans Affairs, Appellee.

Betty R. Klekar, Intervenor.

No. 97–1518.

United States Court of Appeals
for Veterans Claims.

June 1, 1999.

Virginia M. Klekar, pro se.

Leigh A. Bradley, General Counsel; Ron
Garvin, Assistant General Counsel; Mary
Ann Flynn, Acting Deputy Assistant General
Counsel; and Edward V. Cassidy, Jr., were
on the pleadings for the appellee.

Before KRAMER, FARLEY, and HOLDAWAY, Judges.

FARLEY, Judge, filed the opinion of the Court. KRAMER, Judge, filed a dissenting opinion.

FARLEY, Judge:

The appellant, Virginia M. Klekar, appeals a March 26, 1997, decision of the Board of Veterans' Appeals (BVA or Board) denying entitlement to the proceeds of the veteran's National Service Life Insurance (NSLI) policy. Record (R.) at 1–8. On December 16, 1998, the Board's decision was vacated and the matter remanded by a single judge in a memorandum decision. The Secretary filed a motion for a panel review of that decision; the Court will construe that motion as one seeking a panel decision pursuant to Rule 35(b) of this Court's Rules of Practice and Procedure. For the reasons that follow, the Court will grant the Secretary's motion, hereby withdraws the single-judge memorandum decision, issues this opinion in its stead, and will affirm the decision of the Board.

## I. RELEVANT BACKGROUND

The veteran obtained an NSLI policy while on active duty with the U.S. Air Force from January 1951 to January 1955. R. at 12–13. In September 1961, he changed the principal beneficiary on his NSLI policy to his wife at the time, Virginia Klekar. R. at 20–21. In January 1991, a handwritten note was submitted to VA signed by the veteran which changed his beneficiary from Virginia Klekar to Betty Klekar, his second wife, the intervenor. R. at 29. The veteran died in January 1994.

In a letter to VA dated February 27, 1994, the appellant challenged the authenticity of the deceased veteran's signature in the January 1991 note. R. at 37. In support of her allegations, she submitted copies of checks signed by the veteran and a Christmas card signed by Betty Klekar. *Id.* The appellant was told that the case would be sent for a handwriting analysis. R. at 33. In a letter

to VA dated March 4, 1994, the appellant listed additional discrepancies which she and her daughter had found in the veteran's note. R. at 31. She submitted additional evidence of the signature of Betty Klekar and the signature of the veteran. R. at 53–65. On March 9, 1994, VA notified Betty Klekar of the allegation concerning the authenticity of the veteran's signature on the January 1991 note. R. at 70. On March 11, 1994, the chief of the insurance division of VA requested a handwriting analysis from the Office of the Inspector General. R. at 68. Subsequently, Betty Klekar forwarded copies of canceled checks signed by the veteran to VA. R. at 70–76. In support of her claim, the appellant submitted, through her attorney, the opinions of Duayne J. Dillon and Terrence H. Pascoe, two experts who conducted document examinations of the January 1991 note and comparisons between the note and canceled checks signed by the veteran as well as letters signed by Betty Klekar. In forwarding the expert opinions to VA, the appellant's attorney indicated that Betty Klekar had admitted "that the body of the [January 1991 note] was done by her; but that she allegedly presented the completed request form to Donald Klekar for his signature." R. at 80. Mr. Pascoe opined that

[t]he machine copy of [the January 1991 note] does not provide complete legibility; however, on the basis of that which is visible, it would appear that the text of the message and the Klekar signature were written without any noticeable effort. There appears to be consistent line quality devoid of any irregular interruptions, noticeable tremor, or other manifestations of either a tracing or a simulated writing. When compared with the specimen signatures [of the canceled checks], [the signature on the January 1991 note] exhibits letter forms and proportions well within the parameters of those signatures of the specimen checks.

R. at 78.

Mr. Dillon conducted a comparison between the signature on the January 1991 note and the signatures on ten canceled

checks. In his opinion, the comparison "revealed substantial significant differences with respect to line quality, proportionality and individual letter formations." He further opined that it is "highly probable" that the signature on the note and those on the canceled checks "were not written by the same person." R. at 81. Upon comparing the text of the January 1991 note with the handwriting exemplars of Betty Klekar which had been supplied by the appellant, Mr. Dillon formulated an impression that "they were possibly written by the same person." *Id.* After conducting a later comparison between the text of the January 1991 note and handwritten letters signed "Betty," Mr. Dillon opined that the comparison "revealed significant agreement for [him] to conclude that both sets of writings were executed by the same person." R. at 82.

On June 6, 1994, VA obtained an opinion from its forensic laboratory. The VA examiner stated that "the veteran appears to be the author of his signature on [the challenged letter]." R. at 84. The report indicated that the VA examiner had evaluated the veteran's signature on the January 1991 note which was based on an examination of nine documents contained in the VA insurance folder and "[c]opies of [ten] pages of canceled checks and a letter, bearing the signatures of [the veteran]." *Id.*

In June 1994, an administrative decision was rendered by the Office of the Inspector General concluding that the January 1991 note "was signed by the veteran [and] the proceeds are payable to Betty R. Klekar as the beneficiary named on the latest designation, and the claim of Virginia Klekar is denied." R. at 86. The regional office (RO) notified the appellant of the denial of her claim on June 28, 1994. R. at 88. The appellant filed a Notice of Disagreement on July 12, 1994. R. at 90. A Statement of the Case was issued on September 9, 1994, which explained that VA's decision to disallow the appellant's claim was supported by the report from the Office of Investigation under the Inspector General and the report from Mr. Pascoe. R. at 93–97.

On September 29, 1994, a letter dated May 2, 1994, from the appellant was forwarded to the chief of VA's insurance division in St. Paul. R. at 99. In this letter, the appellant stated that "approximately a week before [the veteran's] demise he was discussing his personal affairs with [their] third son Michael and Betty was present. He stated then that he had left this policy to [the appellant], which he felt was the least he could do because of [their] length of marriage." R. at 100–01. The appellant alleged other inconsistencies in Betty Klekar's statements. R. at 101–02. On October 2, 1994, Michael Klekar, a son of the veteran and the appellant, submitted a statement indicating that the veteran had told him in 1993 that he intended to leave his NSLI policy to the appellant and his private insurance policy to Betty Klekar. R. at 104–05. Mark Klekar, also a son of the veteran and the appellant, submitted a statement noting that the veteran had told him "[i]n the summer or possibly late spring of 1993" that it was his intention that the appellant receive the proceeds of the NSLI policy. R. at 106. In her appeal to the BVA, the appellant disagreed with the manner in which the three handwriting reports were weighed. R. at 110. She also stated: "[T]here are serious charges which have been filed against Betty R. Klekar by Leonard Costa, appointed executor of the estate, regarding tampering with the estate of Donald K. Klekar. You can confirm this with Mr. Costa if need be." R. at 110.

On December 21, 1994, Betty Klekar submitted a statement on her behalf. R. at 123–26. She indicated that the veteran had asked his son, Michael, to be the executor of his estate, but "[t]here was no mention of the [VA] Insurance or a separate policy for [her] because he didn't have any other insurance, not even medical." R. at 123. Regarding the alleged charges filed against her by Mr. Costa, Betty Klekar stated that "neither [her] attorney [n]or [herself had] received any legal papers regarding charges of tampering with [her] husband's estate." R. at 125. In addition, she submitted a form designating herself as the principal beneficiary

and Scott Klekar as the contingent beneficiary which the veteran had signed in February 1993. R. at 128.

In January 1997, Lisa Klekar, the veteran's daughter-in-law, wrote a letter to the Board stating:

"I would ... like to inform you that the merits of Betty Klekar have been the subject of question on several occasions. At this time before making a determination I would ask that all these areas be investigated as they relate to this case. All are questions of [p]ublic [r]ecord, and are also documented. These matters include tampering with[ ] the estate of Donald Klekar. All are shown within documents located at the Municipal Courthouse in Martinez, Ca. Case Number # P94–00452." R. at 131–32. The letter further explains that the documents show that during probate the intervenor committed perjury, forged documents concerning ownership of the veteran's vehicle, and concealed a $100,000 promissory note that should have been included in the estate.

R. at 132.

In its March 26, 1997, decision the Board found that the January 1991 note was executed by the veteran and represented a valid change of beneficiary. R. at 3, 7. Consequently, the Board decided that Betty Klekar, the appellee before the BVA, was the last-named beneficiary of the veteran's NSLI policy and entitled to the proceeds of that policy. R. at 3. The Board discussed the handwriting analyses conducted by Mssrs. Dillon and Pascoe, as well as the forensic laboratory report from the Office of the Inspector General. R. at 5–6. The Board also recognized the statements provided by the appellant and her children relating their opinions concerning the intentions of the veteran and the forgery accusations against Betty Klekar, and the statement submitted by Betty Klekar refuting those accusations. R. at 6.

In October 1997, Betty Klekar moved to intervene in this appeal. The Clerk of the

Court granted her motion on November 12, 1997. On December 16, 1998, in a single-judge memorandum decision, the Court vacated the Board's decision and remanded the matter for further proceedings. At the outset, the Court determined that the appellant's claim was well grounded. R. at 3. The Court proceeded to find that VA had failed to satisfy its duty under 38 U.S.C. § 5107(a) because it had failed to assist the appellant in submitting documents identified by the appellant and her children as possibly relevant. The Court determined that the documents from the state court proceedings could be "persuasive on the issue of authenticity." Further, the Court concluded that "the Board acted prematurely in adjudicating the merits of the appellant's claim." The matter is now before the Court on the Secretary's motion for panel decision.

## II. ANALYSIS

A veteran's right to change the beneficiary of his NSLI policy is provided for by 38 U.S.C. § 1917(a) which states:

The insured [under a policy of NSLI] shall have the right to designate the beneficiary or beneficiaries of insurance maturing on or after August 1, 1946, and shall, *subject to regulations,* at all times have the right to change the beneficiary or beneficiaries of such insurance without the consent of such beneficiary or beneficiaries.

(emphasis added); *see also Young v. Derwinski,* 2 Vet.App. 59, 61 (1992).

The implementing regulation provides that

The insured shall have the right at any time, and from time to time, and without the knowledge or consent of the beneficiary to cancel the beneficiary designation, or to change the beneficiary.... A change of beneficiary to be effective must be made by notice in writing *signed by the insured or his agent,* and must contain sufficient information to identify the insured. Whenever practicable such notices shall be given on blanks prescribed by the Department of Veterans Affairs. Upon receipt

by the Department of Veterans Affairs, a valid designation or change of beneficiary shall be deemed to be effective as of the date of execution.

38 C.F.R. § 8.47 (1996) (now § 8.22 amended) (emphasis added); *see also Curtis v. West*, 11 Vet.App. 129, 133 (1998) (under federal law a beneficiary change must be signed by the veteran and "the plain meaning of § 8.22 requires that the veteran give notice in writing, signed by him, to change his beneficiary").

 In *Young*, the Court used a two-prong test to determine if an actual change in beneficiaries had occurred. 2 Vet.App. at 61. The first prong requires "evidence of an intention on the part of the veteran to change the beneficiary," and the second prong requires an overt act undertaken to effectuate that intent. *Id.* When a veteran signs and mails a letter changing his beneficiary on his NSLI policy, he has satisfied the two-prong test. *Id.* "The existence of the carbon copy of the signed letter would be evidence of an intention to change the beneficiary, and the signing and mailing of the letter would constitute overt acts taken to effectuate this intent." *Id.* The determination of whether a veteran has signed and mailed a letter constituting a change in beneficiary is a factual determination subject to the "clearly erroneous" standard of review. *Id.; see also* 38 U.S.C. § 7261(a)(4). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). In determining whether a finding is clearly erroneous, "this Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible basis' in the record for the factual determinations of the BVA ... we cannot overturn them." *Gilbert v. Derwinski*, 1 Vet. App. 49, 53 (1990).

 Contrary to the arguments of the appellant and the position of our dissenting colleague, the sole determinative issue presented for review is the Board's factual determination as to the authenticity of the veteran's signature on the January 1991 note, not the authenticity of the text of the note, alleged but unrelated legal proceedings, or unsubstantiated expressions of distrust among the parties. As the regulation clearly states, an effective change of beneficiary must be in writing and "signed by the insured." 38 C.F.R. § 8.22; *see also Curtis, supra.* In this case, two of the three experts who examined the text and signature of the January 1991 letter and compared them with the signature exemplars of the veteran and the intervenor opined that the signature on the January 1991 letter and the veteran's signature on the exemplars could be the same. The other expert, Mr. Dillon, stated that the person who authored the handwritten letters signed by "Betty" also authored the January 1991 letter. R. at 82. The Board has the duty to assess the credibility and weight to be given to the evidence. *Wilson v. Derwinski*, 2 Vet.App. 614, 618 (1992); *Wood v. Derwinski*, 1 Vet.App. 190, 193 (1991). The Board reviewed the evidence of record including the expert opinions and the accusations raised by the appellant and her children and concluded that the veteran had signed the January 1991 note. If there was a plausible basis in the record for the Board's finding that the signature on the January 1991 letter was that of the veteran, the Court must affirm that determination. Here, we hold that there is a plausible basis in the record for this finding.

The Court will speculate no further as to the purported relevance that documents identified by the appellant but not submitted might have on the authenticity of the January 1991 note. In *Forshey v. West*, which was authored by our dissenting colleague, this Court addressed an appellant's argument that VA had failed in its duty to assist when it did not obtain photographs, identified in a police report, which had been taken shortly after an accident had occurred. 12 Vet.App. 71, 75 (1998). Even though the appellant had submitted a well-grounded

claim, the Court stated that "[b]ecause the appellant has not offered a basis for believing that the photographs would be anything but cumulative of evidence already in the record, the Court holds that any error that may have occurred in failing to obtain the police photographs was not prejudicial to the appellant." *Id.; see generally Curtis,* 11 Vet.App. at 133 (the Court will not speculate as to why the designation of beneficiary signed by the holder of the general power of attorney was entered as valid by VA employee).

## III. CONCLUSION

The Secretary's motion for panel decision is granted. The Court holds that the appellant has not demonstrated that the BVA committed either factual or legal error that requires reversal or remand. *See* 38 U.S.C. §§ 5107, 7104(d), 7261; *Gilbert,* 1 Vet.App. at 52–53 (1990). The March 26, 1997, BVA decision is AFFIRMED.

KRAMER, Judge, dissenting:

As we have long held, the adjudication of claims by VA involves "chronological obligations." *Gilbert v. Derwinski,* 1 Vet.App. 49, 55 (1990). "The initial burden is on the shoulders of the veteran or the claimant" to submit a well-grounded claim. *Murphy v. Derwinski,* 1 Vet.App. 78, 81–82 (1990). As the majority acknowledges, Mr. Dillon, a handwriting expert, noted "substantial significant differences with respect to line quality, proportionality and individual letter formations" and opined that it is "highly probable" that the signature on the note submitted to VA is not that of the veteran. R. at 81. Given this expert opinion submitted by the appellant indicating forgery, there is no question that this claim is well grounded. *Murphy,* 1 Vet.App. at 81 (claim is well grounded where it is "plausible").

When an appellant presents a well-grounded claim for VA benefits the second chronological obligation is triggered: VA has a duty to assist the appellant "in developing the facts pertinent to the claim." 38 U.S.C. § 5107(a); *see Allday v. Brown,* 7 Vet.App.

517, 526 (1995); *Littke v. Derwinski,* 1 Vet. App. 90, 91–92 (1990); *Murphy,* 1 Vet.App. at 81–82 (once claimant submits plausible claim, i.e., one which is meritorious on its own or capable of substantiation, Secretary is obligated to assist in developing facts pertinent to claim); *see also Elkins v. West,* 12 Vet.App. 209, 219 (1999); *Grottveit v. Brown,* 5 Vet.App. 91, 93 (1993). "This duty is neither optional nor discretionary." *Schroeder v. Brown,* 6 Vet.App. 220, 224 (1994). Once the duty to assist has been triggered, it applies to all identified documents that are facially relevant and available. *See* FED. R.EVID. 401 (defining "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence") (cited in *Counts v. Brown,* 6 Vet.App. 473, 476–77 (1994)). The majority's central error consists of ignoring the chronological nature of the claims adjudication process. In the past we have recognized that where the Board fails to fulfil the duty to assist, its evaluation of the evidence is inherently flawed because all of the evidence was not before the Board and the effect of the unobtained evidence on the merits cannot be known. In *Schroeder,* VA failed to provide the veteran with a medical examination after he presented a well-grounded claim. 6 Vet.App. at 225. The Court held:

> The net result of this failure to assist the appellant is that the Board's conclusion that "[t]here is no evidence showing that a lack of feeling in the right wrist or hand played a significant role in the injury to the right wrist ..." is a self-fulfilling prophe[c]y as long as the duty to assist is not carried out. Accordingly, we vacate the Board's decision, and remand this matter for further development and readjudication consistent with this opinion.

*Id.* Put simply, there can be no meaningful evaluation of the merits before all the identified, relevant evidence has been gathered.

In this case, both the appellant and her daughter have specifically averred that certain state court proceedings concerning the

veteran's estate, identified by court name and case number, contain court findings that the intervenor committed fraud in connection with the veteran's estate, including forging legal documents. If so, although the majority has incorrectly narrowed its focus to the "authenticity of the veteran's signature on the January 1991 note," Op. at 507, such findings would appear to bear not only on the authenticity of the signature, but also on whether the veteran's signature may have been obtained by fraud or coercion, and thus invalid. *See Jones v. Brown,* 6 Vet.App. 388, 390 (1994) (veteran must have intended to change beneficiary for writing to be valid) (citing *Young v. Derwinski,* 2 Vet.App. 59, 61 (1992)). Therefore, I believe that VA's failure to assist the appellant in obtaining these documents was a violation of its duty under 38 U.S.C. § 5107(a), and, hence, that the Board acted prematurely in adjudicating the merits of the appellant's claim, and its decision must be vacated.

Even assuming that no such duty exists, the appellant was, at the very least, entitled to a rationale from VA supporting a conclusion that the identified records are not relevant. In this case the Secretary has never addressed the appellant's request, not even in his brief.

> Inherent in the duty-to-assist obligation and the *Gilbert* explanation mandate is a requirement for the Secretary to respond to a claimant's request for VA assistance one way or the other. If VA turns the request down because it finds that the requested information is not relevant or that the claim is not well grounded (a prerequisite to the triggering of the duty-to-assist obligation under section 5107(a), ... then the claimant will have the opportunity to try to convince VA that the information he seeks is relevant or that the claim is well grounded, or to submit other evidence as an alternative). In this case, the appellant received no response whatsoever except for the assertions in the Secretary's brief that searching through the Nürnberg records "would be an unproductive use of [Government] resources." ...

On remand, the appellant's request must be dealt with by VA directly.

*Godwin v. Derwinski,* 1 Vet.App. 419, 425 (1991). Accordingly, the appellant has been wrongfully denied the explanation to which she is entitled.

The majority vainly tries to justify its failure to enforce the duty to assist by citing to the Court's decision in *Forshey v. West,* 12 Vet.App. 71 (1998). However, as the quotation used by the majority reveals, the issue in *Forshey* was whether the unobtained evidence would have been cumulative of the evidence already of record. In *Forshey,* the appellant asserted the duty to assist had been violated because the Secretary had failed to obtain photographs of an accident scene taken by a police officer. In that case, the Court already had before it the police officer's written description of the accident scene, the appellant's description, a description from a friend of the appellant, and the appellant's own photographs of the accident scene. All of the available evidence provided essentially similar descriptions of the accident scene, and the appellant did not assert that the unobtained photographs would be inconsistent with the numerous, uncontradicted items already of record. Accordingly, the Court found that the duty to assist had not been violated because the relevant facts were already well documented by uncontradicted evidence and there was no "basis for believing that the photographs would be anything but cumulative of the evidence already in the record." *Id.* at 75. In this case, unlike *Forshey,* the evidence *is* in conflict as to the relevant facts, and the Court has no basis for believing that the unobtained evidence would be cumulative of evidence already of record. Therefore, the majority's reliance on *Forshey* is unquestionably misplaced.

The decision of the majority essentially holds that where the evidence of record supports the Board's adverse conclusion, the Board's failure to fulfill the duty to assist is harmless error. This result is not only inconsistent with "the strongly and uniquely

**510**

pro-claimant" veterans benefits scheme recognized by our case law, the Federal Circuit, and the Supreme Court, *see Hodge v. West,* 155 F.3d 1356, 1362 (Fed.Cir.1998), its conclusion that an adequate analysis of the evidence of record can cure an incomplete record is inconsistent with any rational, fair system of adjudication, *see Schroeder, supra.* I must, therefore, dissent.